# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DYLAN JAMES KAMMERAAD,

       Defendant-Appellant.

FOR PUBLICATION
October 7, 2014
9:00 a.m.

No.  315114
Allegan Circuit Court
LC No.  12-017748-FH

Before:  MURPHY, C.J., and SHAPIRO and RIORDAN, JJ.

MURPHY, C.J.

Defendant was convicted by a jury of one count of aggravated assault, MCL 750.81a(1), three counts of resisting, obstructing, or assaulting a police officer, MCL 750.81d(1), two counts of assault of a prison employee, MCL 750.197c(1), and one count of refusing or resisting collection of biometric data (fingerprints), MCL 28.243a.  He was also held in contempt of court. Defendant appeals his convictions and the contempt ruling as of right.  We affirm, except with respect to one of the counts of resisting and obstructing an officer, which conviction we vacate on the basis of the prosecution's concession that there was insufficient evidence to sustain the conviction.  In this opinion, we hold that defendant, being competent, forfeited his constitutional rights to counsel, self-representation, and to be present in the courtroom during trial, given the severity of his misconduct and his absolute refusal to participate in any manner in the proceedings.  Although the circuit court ordered appointed counsel to represent defendant during the trial, over counsel's strenuous objections and despite defendant's refusal to work with counsel, we conclude that defendant was not constitutionally entitled to counsel in the first place under the circumstances.  Therefore, any assumption that counsel entirely failed to subject the prosecution's case to any meaningful adversarial testing does not warrant reversal.  Defendant was free to refuse the assistance of counsel, to refuse self-representation, and to refuse appearing at or participating in his trial, forfeiting the associated constitutional rights.  And he cannot now complain that counsel's performance was deficient for failing to adequately defend against the prosecution's case, considering that it was always defendant's expressed wish not to present any type of defense to the charges.

# I. HISTORY

## A. UNDERLYING FACTS

The charges in this case stem from an incident at a dance hall in which defendant punched the unsuspecting victim in the face. Police arrived at the scene, and patrons identified defendant as the person who committed the assault. Defendant was arrested and transported to the county jail for booking. Defendant was evasive and uncooperative, refusing to give police his full name or otherwise answer questions and resisting attempts to have his fingerprints taken. As three officers tried to escort defendant to a segregated unit of the jail, defendant "went to the floor" and started to kick and flail his arms at the officers. Defendant was subdued by police and carried to a segregation cell, at which time the officers searched defendant. Defendant again physically resisted and kicked at the police during the search. The officers removed a lanyard from around defendant's neck that held a small folding knife.

## B. DISTRICT COURT PROCEEDINGS

The lower court record indicated that defendant refused to sign various standard district court forms and that he refused to attend a "pre-exam" conference. At the subsequent preliminary examination, the district court asked defendant if he wished to have a court-appointed attorney, and defendant responded:

> I take exception. I refuse any and all court appointed attorneys and their services. I refuse any and all trials. I refuse any and all juries. I refuse any and all court services. I take exception to this process. And I take exception to these unlawful proceedings. Have the prosecution swear in and certify the false charges, the fake charges they are holding. . . . .
>
> . . .
>
> I do not trust that man.[1] . . . [T]hat man does not speak for me. I refuse any and all court appointed attorneys, and their services.

Defendant repeated parts of this mantra in response to almost every statement made and question posed by the district court, regularly interrupting the court. The district court finally threatened to have defendant gagged. When the first witness was called to testify, defendant blurted out, "I take exception. That man has a license to lie." After some more interruptions, the district court directed the bailiff to gag defendant, but the bailiff was apparently unsuccessful, and defendant exclaimed:

---

[1] This was a reference to an attorney appointed by the court to assist defendant and to answer any questions defendant might have relative to the preliminary examination. This same attorney would later be appointed by the circuit court to represent defendant.

That is not my attorney. I take exception. That is not my attorney. I take exception to that. I'm here under duress of imprisonment, taken by force, and violent threat. Made good. I take exception to this process, and I take exception to these unlawful proceedings. Have the prosecution swear and certify the fake charges they are holding.

Pardon me, Judge. You wouldn't be trying to use the prestige of your office to have me sign into a one-sided contract, would you? Did you or did you not swear an oath to uphold the laws of the people? If you did, you're in dereliction of your duties. If you did not, that speaks for itself. I'm without an LEP[2] interpreter, and I do not understand.

At this point, the district court had defendant removed to the bailiff's office where defendant could view and listen to the preliminary examination. As he was escorted out of the courtroom, defendant continued his rantings. After the testimony was completed, defendant returned to the courtroom, where he again repeatedly stated that he took exception to the proceedings. Defendant was bound over to the circuit court.

## C. CIRCUIT COURT ARRAIGNMENT

At his circuit court arraignment, defendant essentially carried on in the same manner as at the preliminary examination. Defendant refused to face forward towards the bench. Here are some excerpts of defendant's statements at the arraignment:

I take exception, I am one of the people of the Republic of Michigan . . . in this State of the Union.

. . .

I do not understand nor do I speak the English of this Court.

. . .

I demand immediate emergency discharge and full pay for my time and energy at $20.00 an hour, 16 hours a day since April 29, 2012.

. . .

I take exception, I refuse any and all court appointed attorneys and their services. I refuse any and all jury services. I refuse any and all Court services. I refuse any services, any and all services. I take exception.

After repeatedly interrupting the circuit court with the same machinations, the following colloquy occurred:

---

[2] It appears that LEP stands for Limited English Proficiency.

-3-

| *Court.* | Have you given this right to counsel significant serious thought Mr. Kammeraad? |
|---|---|
| *Defendant.* | I take exception, I take exception. |
| *Court.* | Mr. Kammeraad is not responding to the Court's inquiries. |
| *Defendant.* | And without an LEP interpreter I do not understand nor do I speak the English of this Court. |
| *Court.* | Mr. Kammeraad is choosing not to respond to the Court's questions. I'm finding therefore that he has waived his right to the assistance of counsel either retained by him and paid by him or appointed by the Court. Similarly he's waived his right to assistance by a legal advisor who would not represent him or advocate for him but serve as a provider of legal advice and guidance at his request. . . . . |
| *Defendant.* | [I] refuse to become a party to and join in the acts of entrapment, extortion, exploitation of vulnerable victims, coer[c]ion and human trafficking and human bondage. |

When asked how he pleaded to the charges and whether he wished to be heard on bond, defendant stated that he took exception. The circuit court noted that defendant was refusing to communicate and that it would enter on defendant's behalf a plea of not guilty. Defendant continued to assert that he was refusing any and all court-appointed attorneys and court services and that he took exception to the proceedings.

## D. PRETRIAL MOTION HEARINGS

At a hearing to amend the felony information, the circuit court initially asked defendant whether he waived his right to counsel or refused to be represented by counsel. Defendant responded, "I take exception." The court proceeded to review the pending charges and the possible punishment for each charge. The circuit court next informed defendant that if he wished to represent himself, he would be expected to follow the rules of procedure and evidence and the court could not assist defendant as his advocate. When asked if he understood, defendant responded:

I take exception, I'm without a LEP interpreter, I do not understand what is going on here. I am not an attorney, I've never agreed to be in pro per and I have never agreed to represent myself in your venue.

At this stage in the hearing, the circuit court noted that defendant was "in a wheelchair and . . . half naked from the elbows up." A deputy chimed in that defendant refused to get

dressed and that there was no physical reason for him to use a wheelchair.[3]  The circuit court then expressed its belief that defendant was determined to disrupt the proceedings and had demonstrated an unwillingness to cooperate in any material way, including responding to the court's inquiries.  The circuit court made an attempt to have defendant clearly and unequivocally waive his right to counsel, but defendant was entirely uncooperative.  After defendant went on a diatribe that was consistent with his earlier remarks, the circuit court stated that it was convinced that defendant was determined to disrupt the proceedings, and it decided that it was necessary to appoint counsel for defendant.  When asked by the court whether he would fill out a form regarding his financial situation for purposes of indigency status, defendant responded that he took exception.  When informed by the court of the identity of the attorney that the court would be appointing, defendant stated:

> I take exception, I . . . can see that you are relentless in your efforts to entrap me and to help you write an illegal . . . one sided contract. I refuse to be a part, I refuse to be a party, I will not join your organization[']s criminal enterprise to become a . . . part of your criminal actions. I don't understand what is going on here. I am without an LEP interpreter.

Defendant later commented that he did not "associate with anyone that advocates the obnoxious doctrine of criminal syndicalism," that he did not "understand the legal language that's being used against" him, and that no one had his "authority to speak or do anything on [his] behalf."  These and other remarks were made in an interruptive manner.  The day after the hearing, the circuit court formally entered an order appointing counsel on behalf of defendant.

In a subsequent pretrial hearing, the circuit court addressed a motion to further amend the information and appointed counsel's motion to withdraw as defendant's attorney.[4]  Appointed counsel alleged that defendant refused all efforts by counsel to communicate with defendant, that defendant was completely uncooperative, and that defendant refused counsel's services.  The circuit court made the following initial observations:

> The record will reflect that Mr. Kammeraad is present today in the same costume, if you call [it] that, as he presented himself at the last hearing. Namely[,] he is naked from the waist up. He's in what seems like a partial[] dress[] covering his lower torso in a blanket, might be the suicide gown that the jail administration

---

[3] The circuit court stated that defendant had made claims that he was unable to walk.  The court indicated, however, that there was nothing to suggest that there was anything physiologically or medically wrong with defendant.

[4] While the motion itself is not contained in the lower court record, the circuit court stated that it was also hearing a motion for self-representation.  At the hearing, appointed counsel acknowledged that he unilaterally prepared the motion for self-representation, which was to be read in conjunction with his motion to withdraw as counsel.  There is nothing in the record suggesting that defendant himself filed any motion or request for self-representation, nor that he was in agreement with counsel's decision to file the motion for self-representation.

issues to . . . some inmates and he's in a wheel chair and he's handcuffed and belted. And I take it as with the last hearing he's arrayed in the fashion he is because he refused to walk here voluntarily, or walk into the courtroom and he refused to dress in a more appropriate fashion.

The circuit court noted its belief that defendant fully intended to disrupt the proceedings and to burden the court. The court stated that if defendant's behavior persisted, the court would exclude him from the scheduled trial. The circuit court proceeded to raise the subject of waiver of counsel. When asked by the court if he understood that he was entitled to an attorney, defendant renewed his campaign of being nonresponsive, reiterating the statements he made at all of the prior proceedings. The circuit court attempted to obtain a formal waiver of counsel from defendant under MCR 6.005, which provides in relevant part:

> (D) [T]he court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

The circuit court carefully and thoroughly touched on all of the requirements set forth in MCR 6.005(D), giving an extensive explanation regarding the trial process and the risks involved in self-representation. Following the court's compliance with MCR 6.005(D), the court gave defendant an opportunity to speak, and defendant, consistently with his history in the proceedings, stated:

> I take exception, I am not Mr. Kammeraad, I'm not the defendant, I'm not a patron of nor subscriber to the legal arts. I'm without an LEP interpreter; I do not understand the legal language that you are using against me.

The circuit court proceeded to further elaborate on the dangers inherent in self-representation and then voiced the following thoughts:

> I won't permit you to appear in this courtroom on an indefinite basis clothed as you are and brought in a wheel chair when you can walk on your own feet. I don't want the jury misperceiving that . . . you are being mistreated by the authorities in jail or that you're unable to walk and therefore you're a legitimate recipient of sympathy and understanding.
>
> That's about everything I can say. I am increasingly . . . convinced that the defendant is determined to disrupt this proceeding[] and all future proceedings and burden the Court with his antics. And much to his counter intuitive and counterproductive lack of benefit and even harm to the merits of this case. So

-6-

having covered that, is there any additional statement you want to make Mr. Kammeraad in response.

Defendant responded, of course, in the same manner as before, interjecting nothing new. The circuit court then directly asked defendant if he wished to represent himself, and defendant replied:

I take exception. I am unauthorized and without license to practice law. I'm not qualified to represent myself, I take exception. This man is not my attorney; I refuse all court appointed attorneys and their services. I do not want any of your Court services. I refuse to take part in this scam, I will not take part in this scam. I am under duress of false imprisonment. I am without an LEP interpreter; I do not understand the legal language that you are using against me. I take exception.

. . .

I demand immediate unconditional discharge so I may fulfill my contractual obligation to the Vatican Independent Press.

When asked about the nature of that contractual obligation, defendant again stated that he took exception. The circuit court, showing a great deal of patience, reiterated the risks of going to trial absent an attorney, and it explained all of the benefits that defendant would receive through representation by counsel. Defendant responded as before, stating, in part, that he had not agreed to proceed pro per, that appointed counsel was not his attorney, and that he refused all court services. The circuit court next asked defendant if he would give any assurances that it was not his intent and desire to disrupt the proceedings, and defendant responded with the identical nonresponsive chatter as before. The court then stated, once again, that defendant had demonstrated with his behavior an intent to disrupt the proceedings and to burden the court. The circuit court indicated, therefore, that it would exclude defendant from future hearings, subject to reconsideration should defendant change his ways and behave appropriately.

Appointed counsel then expressed his wish to withdraw given defendant's absolute refusal to cooperate and communicate in regard to preparing a defense and his refusal to otherwise recognize and engage in the proceedings; defendant had simply chosen not to participate in the case. Appointed counsel asserted that defendant refused to even acknowledge his presence and therefore there was no way to fashion a defense. Counsel questioned the constitutionality and ethics of preparing a defense based simply on what counsel believed would be a sound defense, especially where defendant did not want to defend against or respond to the charges. During discussions between appointed counsel and the circuit court, defendant regularly interrupted, declaring that counsel was not his attorney and had no right to speak on his behalf. At one point, counsel asked defendant if it was his handwriting on certain materials that were being examined in order to determine if defendant could write. And the circuit court noted for the record defendant's so-called response, "He's silent; he's just staring forward as if mimicking [a] catatonic state and not responding in any way." Shortly thereafter, defendant conveyed that he did not trust or even know counsel. When appointed counsel asked defendant whether he wished to address authentication of the materials, defendant remained silent.

Interestingly, the prosecutor repeatedly indicated that defendant, as a citizen of the United States and under the freedoms of the United States Constitution, should be permitted to do as he desired relative to his defense, which was essentially to go to trial and present no defense, with no representation by counsel and no self-representation. The circuit court voiced its frustration, stating:

> I recognize for example that the defendant has a perfect right to represent himself but he won't commit to that course, he won't tell me that's what he wants. He tells me he's unqualified to represent himself and yet he's unwilling to accept representation . . . . He speaks in gibberish and riddles; he won't clearly and unequivocally waive his right to counsel or even consider retaining counsel . . . .

The circuit court denied appointed counsel's motion to withdraw and ordered him to represent defendant at trial. Accordingly, the court also denied the motion for self-representation. The court opined that it was necessary to have an attorney in the courtroom representing defendant, considering that defendant might be excluded from the courtroom due to disruptive behavior, given that the court was unable to procure a clear and unequivocal waiver of counsel from defendant, and in light of the fact that defendant did not wish to represent himself. The circuit court's view was that even if defendant refused to communicate with appointed counsel, counsel was still permitted and had the ability to test and defend against the charges pursued by the prosecution. The circuit court moved on to address the prosecutor's motion to amend the information, and when appointed counsel spoke to address the motion, defendant repeatedly interrupted, claiming that counsel was not his attorney and had no right to speak on his behalf. The court demanded that defendant be silent, and it threatened him with contempt. The hearing concluded shortly thereafter.

## E. PRETRIAL CONFERENCE

The circuit court conducted a pretrial conference on the record absent the presence of defendant. The court indicated that a video connection to the jail had been set up in order to allow defendant's participation; however, the court had been notified by an officer at the jail that defendant refused to leave his cell and would not go to the room in the jail where the video equipment was housed. The circuit court stated that defendant's right to be present in the courtroom for the upcoming trial was in grave jeopardy given his past conduct, but the court would allow him to be present should he change his behavior. The court also informed defense counsel, "You're going to represent him [as] zealously as you would any other defendant and even if he instructs you not to take action on his behalf, you will take action on his behalf if you think it's prudent and reasonable to do so and serves his best interest." Defense counsel noted his belief that ethically he was not permitted to present a defense or engage in any type of strategy, considering that defendant did not wish for him to act on defendant's behalf.

## F. TRIAL

At the start of the first day of trial, the following colloquy between the circuit court, the prosecutor, defense counsel ("Counsel"), and defendant himself took place:

| | |
|---|---|
| *Court.* | I'm calling forward the case of People versus Dylan James Kammeraad . . . . This is the date and time to conduct a jury trial in this matter. I inquire of the counsel whether they're going to make a motion to sequester witnesses. . . . . |
| *Prosecutor.* | We don't – all of our witnesses are not in the courtroom. |
| *Court.* | Okay.  [defense counsel]? |
| *Counsel.* | I am not aware of any witnesses on behalf of the defendant. |
| *Court.* | Okay. |
| *Defendant.* | I take exception.  This man is not my attorney. |
| *Court.* | Mr. Kammeraad is present with us by my recollection for the third time in the courtroom during the pendency of this case.  He's in a wheelchair, he's handcuffed, he's naked from the waist up and it was his voice that we heard just a moment ago.<br><br>Mr. Kammeraad[,] the Court had made a determination at an earlier  date after your first two live appearances in the court, attired and seated as you are now, that it would be impermissible and improper for you to appear before the jury in your present condition.  Do you want to give the Court any assurance of your willingness to dress appropriately and behave in a non-disruptive fashion during this trial? |
| *Defendant.* | I take exception. I am under extreme duress of unlawful and false imprisonment. I am without an LEP interpreter. I do not understand the legal language that is being used against me by you.<br><br>Kevin Cronin[5] you are fully aware that I am not an attorney, I am not a defendant, I am not a juvenile, I am not Mr. Kammeraad, I am not a member of society. I am a natural   person. I have never agreed to join you or your accomplices, the  prosecutor and your court appointed attorney in any criminal proceedings in your courtroom forum and venue.<br><br>I am not the consideration on a contract being constructed here. I am not – I am not a patron of your goods or services. I am [neither] a patron of nor subscriber to the legal arts. I have never agreed to be in pro per. I refuse the assignment and appointment for fraud and inducement to entrapment. I am unauthorized and without license to practice law. I am not qualified to represent myself. Kevin Cronin you are intentionally trying to deceive me into |

---

5 This is the name of the presiding circuit court judge.

believing I can engage in the law business without license. I take exception to this process. This process is undue to me. I take exception to these proceedings as they are unlawful. In good conscience I refuse to associate with the B[ar] and its members. I will not join you in your criminal enterprise. I will not willingly, intentionally or knowingly become a party to your criminal actions. I am not a member of your society. I will not take part in this scam. I'd rather not be here. I am not here voluntarily. Kevin Cronin you are threatening me with further legal abuse and continued detainment in an effort to unduly influence me to invoke the unknown jurisdiction of your court and to help you in an illegal and one sided contract.

Kevin Cronin you have used predatory conduct and abused your authority status to exploit my vulnerabilities. This whole scam that you are knowingly attempt[ing] to coerce me into joining you in is entrapment. Kevin Cronin you have let the procedure of your office over the prosecution to affect the desired outcome.

Kevin Cronin you have solicited a professional legal service on behalf of [defense counsel]. [Defense counsel] does not have my license or my authority to employ my title and his fraudulent misrepresentations. I do not want [defense counsel's] services. I do not want a court appointed attorney. I do not want court appointed services. I refuse any and all of your court services. I'm not a patron of nor a subscriber to the legal arts. I have never agreed to any of this.

Kevin Cronin you have intentionally – you have prosecuted me, the natural person from the bench without any regard to my safety. You have caused me irreparable physical damage and emotional distress [in] . . . a cooperative effort with the prosecutor . . . and your court appointed attorney . . . to break my will and . . . my political and religious beliefs. You have stifled my First Amendment guarantee in your courtroom forum and venue. You have destroyed the integrity and credibility of your office by the continued legal abuse and predatory prosecution actions you have willingly set up conducted against me, the natural person, for your extortion its rewards. Everything that you have done, I mean everything that you continue to do to me under the color of authority has been well documented and will continue to be recorded throughout these sham prosecutions. I will never join you in your criminal activities. I demand immediate unconditional discharge right now. Do you understand me?

-10-

| | |
|---|---|
| *Court.* | Oh, I understand you and I reject your arguments and statements and you're not going to be granted any immediate or unconditional release, or any release on any other terms. The trial is going to begin. |
| *Defendant.* | I take exception. I'd like to be removed. |
| *Court.* | Okay. Well- |
| *Defendant.* | I take exception. I refuse your jury services, I refuse your jury trial, I will not take part. |
| *Court.* | Do you want to represent yourself in this trial? |
| *Defendant.* | I take exception. |
| *Court.* | If you are not Dylan Kammeraad who are you? |
| *Defendant.* | I take exception. |
| *Court.* | Okay. Deputies the defendant can be removed where he can watch the proceedings on video. |

Defendant was removed from the courtroom. Defense counsel again moved the circuit court to allow him to withdraw, but the court denied the request. On two occasions during jury voir dire, defense counsel exited the courtroom in an attempt to confer with defendant, only to return and "defer" to the circuit court without questioning or challenging any jurors. Defense counsel also declined to give an opening statement after trying to confer with defendant. Thereafter, various witnesses for the prosecution testified regarding the charged crimes. After direct examination of each witness, defense counsel attempted to confer with defendant, but counsel ultimately declined to cross-examine any of the state's witnesses following counsel's interactions with defendant. The prosecution then rested. After again endeavoring to confer with defendant, defense counsel declined to present any evidence. He also declined to give a closing argument and offered no objections to the jury instructions. After the court administered the jury instructions, defense counsel stated for the record, outside the presence of the jury, that he attempted to communicate with defendant and to apprise him of his options several times throughout the course of the trial, but each time defendant mostly remained silent and refused to acknowledge counsel.

Defendant was convicted by the jury on all of the charges. He was sentenced to 275 days in jail for the convictions on the three counts of resisting, obstructing, or assaulting a police officer, one year in jail for the aggravated assault conviction, 19 to 60 months' imprisonment for the convictions on the two counts of assaulting a prison employee, and to 90 days in jail for the conviction related to defendant's refusal to provide fingerprints. In addition to these sentences, defendant was also ordered to serve an extra 30 days in jail at the conclusion of his other sentences, after the circuit court held defendant in contempt at the sentencing hearing. Defendant attended the sentencing hearing in a wheelchair and half-clothed, as he had done previously, and when he interrupted the proceeding and began to once again spout the commentary known all too well by the circuit court, the court held him in contempt and had him removed from the courtroom. Defendant appeals as of right.

-11-

## II. ANALYSIS

### A. CONSTITUTIONAL AND STATUTORY RIGHT TO BE PRESENT AT TRIAL

Defendant maintains that the circuit court improperly removed him from the courtroom during defendant's trial. Defendant argues that his appearance at trial, while bothersome, was not disruptive and did not justify his removal. Thus, according to defendant, his statutory and constitutional right to be present during his trial was violated, necessitating reversal and remand for a new trial.

A criminal defendant has a statutory right to be present during his trial. MCL 768.3 ("No person indicted for a felony shall be tried unless personally present during the trial[.]"). "Similarly, an accused's right to be present at trial is impliedly guaranteed by the federal and state Confrontation Clauses, US Const, Am VI; Const 1963, art 1, § 20, the Due Process Clauses, US Const, Am XIV; Const 1963, art 1, § 17, and the right to an impartial jury, Const 1963, art 1, § 20." *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984) (case citations omitted). However, "'a defendant may waive both his statutory and constitutional right to be present during his trial.'" *People v Buie (On Remand)*, 298 Mich App 50, 56-57; 825 NW2d 361 (2012), quoting *People v Montgomery*, 64 Mich App 101, 103; 235 NW2d 75 (1975). The *Buie* panel explained:

> Waiver is defined as the intentional relinquishment or abandonment of a known right. A defendant can waive his right to be present by (1) voluntarily being absent after the trial has begun, or (2) being so disorderly or disruptive that his trial cannot be continued while he is present[.]
>
> It is not seriously questioned that a defendant has the power to waive *constitutional* rights, provided he does so intelligently, understandingly and voluntarily. A valid waiver of a defendant's presence at trial consists of a specific knowledge of the constitutional right and an intentional decision to abandon the protection of the constitutional right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. [*Buie*, 298 Mich App at 57 (citations and quotation marks omitted).]

Here, while defendant expressly asked to be removed from the courtroom before the start of trial, the record does not reflect that defendant was ever specifically informed of his constitutional right to be present at trial, even though the circuit court's exhaustive efforts certainly made it implicitly clear that he had a right to be present. See *id.* at 58 (whether the defendant knowingly or understandingly waived his constitutional right to be present during trial could not be determined where the record was silent "as to whether he was ever specifically apprised of his constitutional right to be present"). Accordingly, and hesitantly, we conclude that defendant did not waive his right to be present for trial on the basis of a voluntary relinquishment

when he asked to be removed from the courtroom.  However, we hold that defendant lost his right to be present on the basis of his disorderly and disruptive behavior.[6]

In *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970), the United States Supreme Court addressed the question "whether an accused can claim the benefit of th[e] constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial."  While emphasizing that "courts must indulge every reasonable presumption against the loss of constitutional rights," the Court nevertheless held "that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* at 343.  The Court elaborated:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. . . . .
>
> . . .
>
> The trial court in this case decided under the circumstances to remove the defendant from the courtroom and to continue his trial in his absence until and unless he promised to conduct himself in a manner befitting an American courtroom. As we said earlier, we find nothing unconstitutional about this procedure. . . . Prior to his removal [the respondent] was repeatedly warned by the trial judge that he would be removed from the courtroom if he persisted in his unruly conduct, and . . . the record demonstrates that [the respondent] would not have been at all dissuaded by the trial judge's use of his criminal contempt powers. [The respondent] was constantly informed that he could return to the trial when he would agree to conduct himself in an orderly manner. Under these circumstances we hold that [he] lost his right guaranteed by the Sixth and Fourteenth Amendments to be present throughout his trial.

---

[6] Although the *Buie* panel spoke in terms of "waiver" in regard to losing the right to be present in the courtroom during trial on the basis of disorderly or disruptive conduct, we believe that the more accurate expression is "forfeiture" of the right, given that, as *Buie* itself acknowledged, "waiver" involves the intentional relinquishment of a "known" right, yet *Buie* eventually analyzed the disorderly or disruptive prong despite no indication that the trial court apprised the defendant of his constitutional right to be present. *Buie*, 298 Mich App at 57-59.  Later in this opinion, we thoroughly discuss the distinctions between waiver and forfeiture of constitutional rights.

-13-

It is not pleasant to hold that the respondent . . . was properly banished from the court for a part of his own trial. But our courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes. As guardians of the public welfare, our state and federal judicial systems strive to administer equal justice to the rich and the poor, the good and the bad, the native and foreign born of every race, nationality, and religion. Being manned by humans, the courts are not perfect and are bound to make some errors. But, if our courts are to remain what the Founders intended, the citadels of justice, their proceedings cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the Illinois trial judge in this case. The record shows that the Illinois judge at all times conducted himself with that dignity, decorum, and patience that befit a judge. [*Id.* at 343, 345-347.]

In the case at bar, before the day of trial and throughout the proceedings in the district and circuit courts, defendant showed nothing but contempt for the courts and the judicial proceedings. He defiantly refused to participate in the process or to accept any and all services, regularly interrupted the courts with his denunciation of the justice system, made far-fetched claims that had no basis in fact or law, and refused to answer questions posed to him by the courts. Furthermore, defendant defiantly showed up in inappropriate attire and in a wheelchair that was not needed given that he was ambulatory, accused the courts of being derelict in their duties, needlessly demanded an interpreter, as it is quite evident that defendant is fluent in the King's English, and generally engaged in disrespectful, disorderly, and disruptive behavior.

Despite this history, the circuit court allowed him yet another chance on the day of trial to show that he could conduct himself properly and merit an opportunity to remain present during trial. Defendant, however, decided to continue with the same disrespectful, rebellious, combative, disorderly, and disruptive antics that he had practiced from the inception of the court proceedings. At trial, defendant again showed up in a wheelchair and he was naked from the waist up, reflecting utter contempt for the court and the trial process.[7] When the circuit court expressly asked defendant whether he wished to give any assurances of a willingness to dress and behave appropriately and to act in a non-disruptive manner, defendant proceeded to conclusively establish that he was not willing to do so, as evidenced by defendant launching into a tirade against the system and the circuit judge himself. Defendant spoke directly to the circuit court, disrespectfully calling the judge by his first and last name, improperly accusing the court of being part of a scam, "criminal enterprise," and sham prosecution, and charging the court with

---

[7] We note that Canon 3(A)(2) of the Michigan Code of Judicial Conduct provides that "[a] judge may require lawyers, court personnel, and litigants to be appropriately attired for court and should enforce reasonable rules of conduct in the courtroom."

engaging in abusive and predatory conduct. Defendant continued to stubbornly defy the court by not answering questions asked of him, interrupting the court, and making spurious claims and ridiculous demands in general. Defendant's combative, rhetorical, and disrespectful question to the court, "Do you understand me?" reflected his complete disdain for the court and the proceedings. The circuit court's conclusion that defendant would continue to behave and conduct himself inappropriately and in a disruptive, defiant, and disorderly fashion once the trial commenced was fully supported by the record. As the Supreme Court expressed in *Allen*, 397 US at 343, "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." Defendant epitomized the type of defendant alluded to in *Allen*, and the circuit court confronted him appropriately. We hold that the circuit court properly excluded defendant from the courtroom during his trial.

## B.  CONSTITUTIONAL RIGHT TO COUNSEL

Defendant argues that he was denied the effective assistance of counsel given counsel's complete failure to subject the prosecution's case to meaningful adversarial testing. Defendant contends that in such cases there is no requirement to establish prejudice; therefore, he is entitled to reversal of his convictions and remand for a new trial.

We review de novo the constitutional question whether a defendant was denied his Sixth Amendment right to the effective assistance of counsel; however, underlying factual findings are reviewed for clear error. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). The Sixth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence." The analogous provision of the Michigan Constitution provides that "[i]n every criminal prosecution, the accused shall have the right to . . . have the assistance of counsel for his or her defense[.]" Const 1963, art 1, § 20. "'The right to counsel is the right to the effective assistance of counsel.'" *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970).

In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court recited the well-established principles that are generally applicable when analyzing an ineffective assistance claim:

> A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test. First, the defendant must show that counsel's performance was deficient.[8] This requires

---

[8] Establishing deficient performance requires a showing that counsel's "representation fell below an objective standard of reasonableness[.]" *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.  [Citations and quotation marks omitted.]

In *Cronic*, 466 US at 653-657, the United States Supreme Court eloquently explained in detail the importance and underpinnings of the constitutional right to counsel, which is worthy of repeating here:

An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have."

The special value of the right to the assistance of counsel explains why "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." The text of the Sixth Amendment itself suggests as much. The Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence." Thus, "the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." If no actual "Assistance" "for" the accused's "defence" is provided, then the constitutional guarantee has been violated. To hold otherwise "could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

. . .

The substance of the Constitution's guarantee of the effective assistance of counsel is illuminated by reference to its underlying purpose. "[T]ruth," Lord Eldon said, "is best discovered by powerful statements on both sides of the question." This dictum describes the unique strength of our system of criminal justice. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective

that the guilty be convicted and the innocent go free." It is that "very premise" that underlies and gives meaning to the Sixth Amendment. It "is meant to assure fairness in the adversary criminal process." Unless the accused receives the effective assistance of counsel, "a serious risk of injustice infects the trial itself."

Thus, the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. . . . "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." [Citations omitted.]

The *Cronic* Court then acknowledged that, in general, it is necessary to establish that prejudice was incurred by a defendant in addition to a deficient performance by counsel in order to establish a claim on the basis of ineffective assistance of counsel. *Id.* at 658 ("Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."). The Court, however, recognized that there are instances in which prejudice is presumed, including the following examples:

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. [*Id.* at 659.]

Our Supreme Court in *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), noted that *Cronic* identified certain "rare situations in which the attorney's performance is so deficient that prejudice is presumed."

For purposes of our analysis, we shall assume that defense counsel failed entirely to subject the prosecution's case to any meaningful adversarial testing. Typically, such a conclusion would end the analysis, mandating reversal of defendant's convictions. A necessary component underlying the analysis in *Cronic*, however, is that the criminal defendant was indeed constitutionally entitled to the assistance of counsel and had not waived or forfeited the right.[9] Although we appreciate that defendant here had appointed counsel, the circumstances presented lead us to conclude that defendant had forfeited his right to counsel, thereby undermining any

---

[9] There is a difference between waiver of counsel and forfeiture of counsel, which we shall explore later in this opinion.

-17-

*Cronic*-based argument and rendering irrelevant our assumption that counsel failed entirely to subject the prosecution's case to meaningful adversarial testing. Defendant simply did not want counsel. And while a defendant would ordinarily have to be afforded the opportunity to appear pro se at trial upon waiver or forfeiture of counsel, defendant refused to participate in the trial and was steadfastly adamant that he would not represent himself, which certainly would have been the case even had the circuit court ruled that defendant was not entitled to counsel. Defendant wanted no part in the proceedings.

This case presented a unique situation in which a defendant in a criminal prosecution indisputably and defiantly refused to participate in the trial and other judicial proceedings, indisputably and defiantly refused to accept the services of appointed counsel or to communicate with counsel, regardless of counsel's identity, indisputably and defiantly refused to engage in self-representation, indisputably and defiantly refused to promise not to be disruptive during trial, and indisputably and defiantly refused to remain in the courtroom for his jury trial. Under those circumstances and setting aside for the moment any issue about defendant's competency, which issue is addressed later in this opinion, defendant's constitutional protections were forfeited and there was no constitutional obligation to impose a court-appointed attorney upon the unwilling defendant. If defendant wished to present no defense or challenge to the criminal charges and simply allow the prosecution to present its case-in-chief absent counsel or defendant's presence in the courtroom, whether for purposes of ideology, protestation, or otherwise, he was free to so proceed without any offense to his state and federal constitutional rights to counsel or self-representation. By appointed counsel's assumed complete failure to subject the prosecution's case to meaningful adversarial testing, defendant received exactly what he desired, and we refuse to reward defendant with a new trial on an alleged constitutional deficiency that was of defendant's own making.

In the usual scenario wherein a criminal defendant wishes to waive the right to counsel, the accompanying question that must be answered is whether the defendant should be permitted to represent himself or herself, as this is the reason that the defendant declines the assistance of counsel. The interrelationship being waiver of counsel and self-representation is illustrated by the following passage in our Supreme Court's decision in *Russell*, 471 Mich at 190-192:

> In *People v Anderson*, [398 Mich 361; 247 NW2d 857 (1976),] this Court applied the *Faretta* standard for self-representation and established requirements regarding the judicial inquest necessary to effectuate a valid waiver and permit a defendant to represent himself.[10] Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily

---

[10] In *Faretta v California*, 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975), the United States Supreme Court indicated that the state generally cannot force an attorney upon an unwilling defendant, and it held that a defendant has a constitutional right to self-representation so long as the defendant intelligently, understandingly, and voluntarily waives counsel and chooses to appear pro se.

-18-

through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.

In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:

"The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer."

In [*People v Adkins* (*After Remand)*, 452 Mich 702; 551 NW2d 108 (1996)], this Court clarified the scope of judicial inquiry required by *Anderson* and MCR 6.005(D) when confronted with an initial request for self-representation. *Adkins* rejected a "litany approach" in favor of a "substantial compliance" standard:

"We hold, therefore, that trial courts must substantially comply with the aforementioned substantive requirements set forth in both *Anderson* and MCR 6.005(D). Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. Further, we believe this standard protects the 'vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system.'

Completion of these judicial procedures allows the court to consider a request to proceed in propria persona. If a judge is uncertain regarding whether any of the waiver procedures are met, he should deny the defendant's request to proceed in propria persona, noting the reasons for the denial on the record. The defendant should then continue to be represented by retained or appointed counsel, unless the judge determines substitute counsel is appropriate."

Under *Adkins,* if the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel. In

addition, the rule articulated in *Adkins* provides a practical, salutary tool to be used to avoid rewarding gamesmanship as well as to avoid the creation of appellate parachutes: if any irregularities exist in the waiver proceeding, the defendant should continue to be represented by counsel. [Emphasis omitted.]

In the present case, the circuit court attempted to obtain a formal waiver of counsel by defendant, along with the attendant invocation of the right to self-representation, carefully imparting the information encompassed by MCR 6.005(D) and then directly querying defendant with respect to whether he wished to represent himself. Defendant, however, vigorously voiced a refusal to represent himself, and he refused to expressly acknowledge, let alone accept, the right-to-counsel and waiver-related information conveyed to him by the court. The circuit court was unable to make an express finding that defendant fully understood, recognized, and agreed to abide by the waiver of counsel procedures. Under *Russell* and the authorities cited therein, the required waiver procedures were not met, ostensibly dictating that appointed counsel continue to represent defendant.

Despite, however, the ineffective *waiver* of counsel, we take this opportunity to recognize, adopt, and employ the principle or doctrine of forfeiture of counsel. While the right to counsel is constitutionally protected, this constitutional right can be relinquished by waiver *or* forfeiture. *People v Ames*, 978 NE2d 1119, 1124-1125 (Ill App, 2012); *State v Jones*, 772 NW2d 496, 504 (Minn, 2009); *State v Pedockie*, 137 P3d 716, 721 (Utah, 2006). In *State v Mee*, 756 SE2d 103 (NC App, 2014), the North Carolina Court of Appeals confronted a very similar situation to the one presented to us:

> On 25 March 2013, defendant was before the trial court for trial. He refused to state a clear position regarding counsel and told the trial court that he did not want his retained counsel to represent him at trial, did not want to represent himself at trial, did not want standby counsel to take any role in the trial, and would not remain in the courtroom or otherwise "participate" in his trial. Defendant refused to remain in the courtroom and was confined to a holding cell near the courtroom during trial. [*Id.* at 104.]

The state's witnesses were not subjected to cross-examination, nor was any evidence presented by the defendant, and he was found guilty of various drug offenses. *Id.* at 105. The appeals court reached the conclusion that "[r]eview of the defendant's actions during the fourteen months between his arrest and trial reveal[ed] that he engaged in behavior which resulted in the forfeiture of the right to counsel." *Id.* As we have done in this opinion, the North Carolina Court of Appeals carefully scrutinized the lower court record, noting all of the defendant's defiant conduct from the commencement of the criminal proceedings forward, which record draws many parallels to the record here. *Id.* at 106-113.[11] The *Mee* Court stated that it

---

[11] For example, when the defendant in *Mee* was asked by the trial court about the nature of his objection to appointed counsel's representation, the defendant responded in part, "I'm the proper person. . . . He is not my attorney. I'm a sovereign nation. He is not my attorney." *Mee*, 756 SE2d at 106. Amongst numerous remarks made by the defendant in *Mee* when interacting with

could not condone the defendant's purposeful tactics and conduct that were employed to delay and frustrate the orderly process of the lower court's proceedings. *Id.* at 114. The North Carolina Court of Appeals held that the "[d]efendant, by his own conduct, forfeited his right to counsel and the trial court was not required to determine . . . that defendant had knowingly, understandingly, and voluntarily waived such right[.]" *Id.* The court noted that willful conduct by a defendant that results in the absence of defense counsel constitutes a forfeiture of the right to counsel. *Id.* The court cited with approval *State v Leyshon*, 211 NC App 511, 518-519; 710 SE2d 282 (2011), and its ruling that the right to counsel was forfeited when the defendant there willfully delayed and obstructed lower court proceedings by regularly refusing to state whether he desired an attorney or would represent himself when questioned on the matter by the trial court at multiple hearings. *Mee*, 756 SE2d at 114. Here, we conclude that defendant also forfeited his constitutional right to counsel, considering his refusal to accept, recognize, or communicate with appointed counsel, his refusal of self-representation, and his refusal to otherwise participate in the proceedings.

In *United States v McLeod*, 53 F3d 322, 325 (CA 11, 1995), the United States Court of Appeals for the Eleventh Circuit acknowledged that the right to counsel can be forfeited, expressing:

> The appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected. Nonetheless, the right to assistance of counsel, cherished and fundamental though it may be, may not be put to service as a means of delaying or trifling with the court.
>
> Courts thus have recognized that a criminal defendant may forfeit constitutional rights by virtue of his or her actions. The Sixth Amendment right to counsel, for example, may be forfeited by a defendant's failure to retain counsel within a reasonable time, even if this forfeiture causes the defendant to proceed *pro se*. Additionally, a defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial. . . .
>
> . . .
>
> [A] defendant who is abusive toward his attorney may forfeit his right to counsel. [Citations and quotation marks omitted.]

---

the trial court, he stated: "I do not understand what you're trying to charge me with. The only reason I'm here for is jurisdiction;" "I will not sign any contracts [waiver of counsel]. I will not take any oaths;" "I will never participate in this;" "We will not go forward. I told you I understand no trial;" "I'm not going to proceed;" "I'm an improper person. I am myself. I don't have to represent myself;" "I'm not understanding anything you're talking about;" and "I won't be a part of the proceedings, is what I'm saying." *Id.* at 106-110.

In *United States v Goldberg*, 67 F3d 1092, 1099 (CA 3, 1995), the United States Court of Appeals for the Third Circuit distinguished "waiver" from "forfeiture' relative to the right to counsel, first indicating that waiver constitutes "an intentional and voluntary relinquishment of a known right," which typically occurs under the Sixth Amendment when a defendant makes an affirmative request to proceed pro se or to plead guilty. Here, while defendant made clear that he did not want the services of appointed counsel, defendant made no request to appear pro se at trial, expressly declined to proceed pro se, and provided a nonresponsive answer when specifically asked by the circuit court whether he understood that he had a right to an attorney. Consistently with our earlier discussion of *Russell*, 471 Mich at 190-192, a true waiver of counsel was never successively accomplished, which was also the conclusion by the circuit court. Forfeiture, unlike waiver, "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg*, 67 F3d at 1100.[12] In the present case, we reiterate that although the circuit court informed defendant of his right to counsel, defendant refused to expressly acknowledge the right, and even though he rejected the services of appointed counsel, defendant never explicitly stated that he intended to relinquish the constitutional right. Accordingly, this case fits more comfortably within the doctrine of forfeiture of counsel rather than the doctrine of waiver of counsel.

The *Goldberg* Court also discussed the hybrid situation of "waiver by conduct," which combines elements of forfeiture and waiver, such as where a defendant is warned that he will lose counsel if he engages in dilatory tactics, with any misconduct thereafter being treated as an implied request for self-representation. *Id.* at 1101. Our defendant was not warned that he might lose his right to counsel on the basis of his conduct, and it would be illogical to conclude that defendant implicitly requested self-representation given his express rejection to proceed pro se. Therefore, we do not view this case as a true "waiver by conduct" case. Finally, the Third Circuit in *Goldberg* acknowledged another variant that seems more fitting in relationship to the case at bar:

> Suffice it to say that the Court has approved a trial court's decision to deprive a defendant of a fundamental constitutional right at least where the defendant is aware of the consequences of his actions, but regardless of whether the defendant affirmatively wishes to part with that right.

> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are

---

[12] Alluding back to our discussion of the right to be present at trial and whether defendant lost that right, the *Goldberg* definition of "forfeiture" supports our view that losing the right to be present at trial for disruptive or disorderly behavior constitutes forfeiture and not waiver when the right was never explicitly made known to defendant.

not affirmatively requesting to proceed *pro se. . . .* Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge." [*Id.*]

Whether we coin it as "forfeiture with knowledge" or simply "forfeiture," we conclude that defendant lost his right to counsel on the basis of his conduct and statements.

Honoring a defendant's wishes within reason with respect to declining counsel is a principle that was accepted in *Faretta v California*, 422 US 806, 817; 95 S Ct 2525; 45 L Ed 2d 562 (1975), wherein the Supreme Court acknowledged the "nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." The *Faretta* Court further observed:

> [I]t is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice. [*Id.* at 833-834.]

Defendant had the free choice to refuse the services of appointed counsel, but, as opposed to the circumstances in *Faretta*, he also refused self-representation. Nevertheless, we conclude that defendant had the free choice to refuse both appointed counsel and self-representation, forfeiting these constitutional rights. We note that such was the case in *Mee*, 756 SE2d 103, alluded to and discussed at length earlier in this opinion. In general, "[a] defendant can forfeit his right to represent himself." *Allen v Commonwealth*, 410 SW3d 125, 134 (Ky, 2013). In *Commonwealth v Thomas*, 879 A2d 246, 256 (Pa Super, 2005), the Pennsylvania court rejected the defendant's claim that his constitutional right to self-representation was denied:

> Appellant's next constitutional claim is that he was denied his right to self-representation. This claim is baseless, as it is completely contradicted by the record. On June 20, 2002, appellant filed a motion to appear *pro se,* which the court granted after conducting a full colloquy on October 10, 2002. In an order filed on November 15, 2002, the court appointed attorney Zang as stand-by counsel. Five months later, at trial, appellant made clear that his "strategy" was not to appear and not to present a defense. . . . Appellant's refusal to conduct a defense – either *pro se* or by cooperation with his stand-by counsel – cannot now be twisted into a claim of deprivation of constitutional right.

*Thomas* reflects that a defendant can decide to both refuse the assistance of counsel and refuse self-representation, *collectively* forfeiting these constitutional rights and effectively allowing a prosecutor's case to go unchallenged. As in *Thomas*, we will not allow defendant's reprehensible conduct to now be twisted into a claim that he was deprived of his constitutional rights.

Finally, we deem it necessary to examine and contemplate any potential affect here of the United States Supreme Court's decision in *Indiana v Edwards*, 554 US 164, 177-178; 128 S Ct 2379; 171 L Ed 2d 345 (2008), in which the Court held:

> We . . . conclude that the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

In the case subjudice, defendant did not seek self-representation and refused to participate in the trial. However, *Edwards*, by analogy, might suggest that if defendant were not competent because of severe mental illness, forfeiture of the constitutional rights at issue cannot be recognized and imposing or forcing counsel upon defendant as was done was constitutionally permissible or even necessary. To the extent that *Edwards* supports such a proposition, we conclude that defendant was competent for purposes of finding forfeiture. We base this conclusion on the reasons given in the following section of our opinion in support of affirming the circuit court's ruling that defendant was competent to stand trial and that a competency examination was unnecessary. In sum, we hold that defendant forfeited his right to counsel by his remarks and conduct; therefore, *Cronic* is not implicated and reversal is unwarranted.

As a final comment on the topic of forfeiture of counsel, we emphasize that a finding of forfeiture of this venerable constitutional right should only be made in the rarest of circumstances and as necessary to address exceptionally egregious conduct.

## C. DEFENDANT'S COMPETENCY TO STAND TRIAL

Defendant argues that, given the nature of his actions and comments, the circuit court erred in failing to order a competency examination for defendant and that defense counsel was ineffective for failing to seek a competency determination.

"[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v Missouri*, 420 US 162, 172; 95 S Ct 896; 43 L Ed 2d 103 (1975), citing *Pate v Robinson*, 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966). To protect this due process right, Michigan has enacted statutes and a court rule regarding the competency of criminal defendants. MCL 330.2020(1) provides:

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

-24-

"A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCL 330.2022(1). MCR 6.125 addresses mental competency hearings in criminal cases, and subsection (B) provides:

> The issue of the defendant's competence to stand trial or to participate in other criminal proceedings may be raised at any time during the proceedings against the defendant. The issue may be raised by the court before which such proceedings are pending or being held, or by motion of a party. Unless the issue of defendant's competence arises during the course of proceedings, a motion raising the issue of defendant's competence must be in writing. If the competency issue arises during the course of proceedings, the court may adjourn the proceeding or, if the proceeding is defendant's trial, the court may, consonant with double jeopardy considerations, declare a mistrial.

"The issue of incompetence to stand trial may be raised by the defense, court, or prosecution." MCL 330.2024. "On a showing that the defendant may be incompetent to stand trial, the court must order the defendant to undergo an examination by a certified or licensed examiner of the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of competence to stand trial." MCR 6.125(C)(1); see also MCL 330.2026(1).

With respect to whether a trial court has an obligation to raise the issue of competency and order an examination, and in regard to our standard of review, this Court in *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990), observed:

> Although the determination of a defendant's competence is within the trial court's discretion, a trial court has the duty of raising the issue of incompetence where facts are brought to its attention which raise a "bona fide doubt" as to the defendant's competence. However, the decision as to the existence of a "bona fide doubt" will only be reversed where there is an abuse of discretion. [Citations omitted.]

"[T]he test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Maxwell v Roe*, 606 F3d 561, 568 (CA 9, 2010). Evidence of a defendant's irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence are all relevant in determining whether further inquiry in regard to competency is required. *Drope*, 420 US at 180. "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id.*

The circuit court raised the issue of defendant's competency at a pretrial motion hearing, making the following observations:

> So far I think what he's doing is purposeful, it is not to me, just on the face of it evidence of mental illness or inability from a mental illness standpoint to

represent himself. He seems articulate, he seems capable of writing, he seems familiar with concepts even though he refuses to do more than state them or invoke them. . . . I think this is purposeful behavior of someone who believes he has been treated unfairly but is . . . unwilling because he has so little respect for the legal system, unwilling to engage in any conversation about what his reactions are. I don't think he's really catatonic for example even though he gives that appearance, and I don't think he's nodding off now even though his chin is down to his chest. You know, I think this is part of the performance art that accompanies an intelligent philosophical display of disrespect and contempt for everybody in the room and everybody involved in the process.

. . .

I am not going to order a psychiatric or forensic evaluation of the defendant because my conclusion having engaged with him is that he is in a posture of purposeful and decisive civil disobedience for lack of a better phrase. That even though his strategic course of action may be putting him at increasing risk I think he's made that choice knowingly, voluntarily and intelligently and purposefully because he has no respect for the entire legal system and genuinely believes that no one has any jurisdiction to reign him in on any criminal offense no matter what his behavior is. He thinks . . . this is the correct strategic course to take to make that argument. It is an argument detached from legal reality but he's aware of the reality of this courtroom and his incarceration and he's been offered an attorney. I think this is more or less a strategic game, it is not an expression of mental illness or denial of reality. So, I'm not going to order a forensic examination.

We hold that the circuit court did not abuse its discretion in failing to order a competency examination. "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). On the basis of the facts in the record, the circuit court's conclusion that defendant was capable of understanding the nature of the charges brought against him and capable of rationally assisting in his defense did not fall outside the range of reasonable and principled outcomes. A reasonable judge, situated as the circuit court judge here, could logically have rejected the proposition that defendant was "incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1). A reasonable and principled decision included a finding that defendant intentionally and purposefully, and not because of a mental condition or illness, acted in a defiant and dilatory manner in an attempt to disrupt the proceedings and to show contempt and disrespect for the court and the criminal justice process. The circuit court was able to personally observe defendant's behavior and conduct, hear live defendant's remarks and the tone of and inflections in his voice, and to directly assess defendant's demeanor, attitude, and comments, not us, and we generally defer to the court's findings on such matters. See MCR 2.613(C) ("regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it").

Moreover, the record reflected that defendant is intelligent, articulate, has an expansive vocabulary, and is knowledgeable of some legal terminology ("I've never agreed to be in pro per and I have never agreed to represent myself in your venue[;]" "consideration on a contract"). Defendant clearly had the *capacity* to understand the nature of the charges and to rationally assist in his defense; he evidenced the "ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial." MCL 330.2020(1). However, despite this capacity and ability, defendant chose not to acknowledge or participate properly in the proceedings. To the extent that defendant made occasional statements that were nonsensical or engaged in odd behavior, which might suggest the lack of capacity to understand the charges and rationally assist in his defense due to his mental condition, we again defer to the circuit court's opinion on personal observation of defendant that this was a matter of theatrics, feigning, gamesmanship, defiance, disrespect, and contempt, and not true incompetence. Defendant has failed to overcome the presumption that he was competent to stand trial. The circuit court's decision not to order a competency examination was not an abuse of discretion. Furthermore, on the basis of the record and our findings above, we cannot conclude that defense counsel's failure to request a competency examination constituted deficient performance, i.e., that counsel's performance fell below an objective standard of reasonableness. *Carbin*, 463 Mich at 599-600; *Toma*, 462 Mich at 302.

## D. DOUBLE JEOPARDY AND SUFFICIENCY OF THE EVIDENCE

Defendant contends that the two counts of assaulting a prison employee, MCL 750.197c(1), which were added by way of amendment of the information, were meant to be alternative counts to two of the three counts of resisting, obstructing, or assaulting a police officer, MCL 750.81d(1). Defendant points out that the three counts of resisting and obstructing pertained to conduct directed at three different police officers and that the two counts of assaulting a prison employee pertained to the same conduct directed at two of those officers already covered by the resisting and obstructing counts. As acknowledged by defendant, regardless of any suggestion at the hearings on the motions to amend the information that the counts were in the alternative, the counts were not presented to the jury in the alternative, and we note that the amended information itself did not frame the counts as being in the alternative. Defendant also complains that the prosecutor argued that the resisting and obstructing charges entailed, in part, defendant's failure to cooperate in providing his fingerprints, yet this was already addressed in the charge of resisting collection of biometric data, MCL 28.243a. Defendant further maintains that the prosecutor argued that the resisting and obstructing charges involved, in part, defendant's refusal to give police his name.

Defendant presents the preceding arguments to set up the following appellate claims: (1) the conviction on the biometric data or fingerprinting charge was barred by double jeopardy where the charged conduct was encompassed by the resisting and obstructing charges; (2) the convictions on all three of the resisting and obstructing charges must be vacated on insufficiency grounds because refusal to give one's name cannot constitute resisting and obstructing an officer as a matter of law; and (3), even if the evidence was sufficient to support the convictions on the three counts of resisting and obstructing, double jeopardy barred convictions on two of those counts and on the prison-employee assault charges, given that the same underlying conduct formed the basis of those charges.

We initially reject the double jeopardy arguments. First, other than to simply claim that his constitutional protection against double jeopardy was violated, defendant provides no legal analysis or supporting citations regarding double jeopardy. Accordingly, defendant's double jeopardy arguments have been waived. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) ("'It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.'") (citation omitted). Moreover, even on substantive review, defendant's double jeopardy arguments are unavailing. In *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), the Michigan Supreme Court ruled that the "same elements" test enunciated in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 2d 306 (1932), is "the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." "The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense." *People v Baker*, 288 Mich App 378, 382; 792 NW2d 420 (2010), citing *Smith*, 478 Mich at 307, and *People v Nutt*, 469 Mich 565, 576; 677 NW2d 1 (2004). "If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved." *Baker*, 288 Mich App at 382; see also *Smith*, 478 Mich at 296 ("Because each of the crimes for which defendant here was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the 'same offense' and, therefore, defendant may be punished for each.").

MCL 28.243a(1) provides that "[a] person shall not refuse to allow or resist the collection of his or her biometric data if authorized or required under this act."[13] On the other hand, "[u]nder MCL 750.81d(1), the elements required to establish criminal liability are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). MCL 28.243a(1) requires that the prosecutor establish that the refusal or resistance relates to the collection of biometric data, whereas such an element is not part of the proofs necessary to obtain a conviction for resisting and obstructing a police officer. Further, with a charge of resisting and obstructing a police officer, there is a required *mens rea* element of knowledge and a police officer must be involved, which do not appear to be required to establish a crime under MCL 28.243a.[14] Additionally, as specifically charged here, assault formed part of the basis for the resisting and obstructing charges, and assault is not an element to the offense of resisting collection of biometric data. Thus, there was no double jeopardy violation.

---

[13] "Biometric data" includes "[f]ingerprint images recorded in a manner prescribed by the" Michigan Department of State Police. MCL 28.241a(b)(*i*).

[14] We do not take a definitive position, nor is this opinion to be cited as precedential, with respect to a potential question whether a *mens rea* element must, for constitutional purposes, be read into MCL 28.243a.

With respect to the crimes of resisting and obstructing an officer and assaulting a prison employee, the elements of the latter crime require proof that the defendant "(1) was lawfully imprisoned in a place of confinement; (2) used violence, threats of violence, or dangerous weapons to assault an employee of the place of confinement or other custodian; and (3) knew that the victim was an employee or custodian." *People v Neal*, 232 Mich App 801, 802-803; 592 NW2d 92 (1998), citing MCL 750.197c(1). Accordingly, assault of a prison employee contains elements not included in resisting or obstructing, e.g., that the defendant was lawfully imprisoned in a place of confinement. Moreover, resisting or obstructing contains an element not necessarily included in assault of a prison employee; namely, that the victim is a police officer. Thus, there was no double jeopardy violation.

Finally, with respect to defendant's argument that the convictions on all three of the resisting and obstructing charges must be vacated on insufficiency grounds because refusal to give one's name cannot constitute resisting and obstructing an officer as a matter of law, two of the charges pertained solely to acts of physical resistance and obstruction against two of the officers and had nothing to do with defendant's failure to provide his name. Accordingly, defendant's argument does not reach those two convictions, and they are affirmed. The prosecution agrees on appeal that the third resisting and obstructing conviction relative to the remaining officer was not supported by the evidence, and we will accept that concession and vacate the conviction on that particular count.

## E. CONTEMPT OF COURT

Finally, defendant argues that the circuit court's contempt ruling at the sentencing hearing violated his constitutional right to free speech under the First Amendment and his right to allocution. Defendant maintains that his conduct was not sufficiently egregious to justify a contempt finding that effectively precluded him from exercising his right of freedom of speech and his opportunity to allocute in regard to sentencing.

We review a trial court's decision to hold an individual in contempt of court for an abuse of discretion. *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). However, we review de novo questions of law, such as constitutional issues. *Id*. In *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 707-708; 624 NW2d 443 (2000), this Court discussed a court's contempt powers:

> If the artillery is the queen of battle, then the power to punish contempt is its functional equivalent in the stylized combat of modern litigation. The power to hold a party, attorney, or other person in contempt is the ultimate sanction the trial court has within its arsenal, allowing it to punish past transgressions, compel future adherence to the rules of engagement, i.e., the court rules and court orders, or compensate the complainant. . . . [W]e [have] defined contempt of court as a willful act, omission, or statement that tends to impede the functioning of a court. Indeed, the primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts. Because the power to hold a party in contempt is so great, it carries with it the equally great responsibility to apply it judiciously and only when the contempt is clearly and unequivocally shown. [Citations and quotation marks omitted.]

MCL 600.1701 provides in relevant part:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:
>
> (a) Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.

"When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." MCL 600.1711(1). Summary punishment under MCL 600.1711 "accords due process of law." *In re Contempt of Warriner*, 113 Mich App 549, 554-555; 317 NW2d 681 (1982), vacated in part on other grounds 417 Mich 1100.26 (1983). The contempt "power is essential to preserve the authority of the courts and to prevent the administration of justice from falling into disrepute." *Id.* at 555. A finding of contempt is appropriate when necessary to restore order in the courtroom and to ensure the proper respect for the judicial proceedings. *Contempt of Dudzinski*, 257 Mich App at 108-109.

Here, the transcript reflected that defendant, as he had done several times previously, showed up at his sentencing hearing in a wheelchair "undressed from the hip area up." When defense counsel began answering a question asked of him by the circuit court, defendant interrupted, "I take exception . . . ." When the court later informed defendant that he could now make a statement, defendant responded:

> I take exception, I am not the defendant, I am not in pro per, I'm disabled. I'm not Mr. Kammeraad, I'm not that person. In a firm and honest belief, I believe that this Court has engaged in acts of entrapment and in good conscience I've refused to be associated with or a party to these criminal actions. I've done my best to avoid all acts taken against me and have endured -- .

The circuit court then halted defendant's remarks, stating, "you're presentation to the Court is insulting and contemptuous. It ends right there." The court then held defendant in contempt of court, tacking on 30 days in jail to defendant's sentences.

Given defendant's actions, appearance, and comments at the sentencing hearing, which must be viewed in the context of his behavior throughout the entirety of the proceedings, we hold that the circuit court did not abuse its discretion in holding defendant in contempt of court. Defendant's conduct during sentencing was disorderly, contemptuous, and insolent, directly tending to impair the respect due to the court and reflecting the culmination of disorderly, contemptuous, insolent, and disrespectful behavior, MCL 600.1701(a), all of which was directly witnessed by the court first hand. The circuit court had been remarkably patient with defendant throughout the course of the judicial proceedings, and defendant's continued defiant conduct compelled the court's contempt response in order to restore some order to the courtroom and to ensure some level of respect for the proceedings.

With respect to the First Amendment argument, "[d]isruptive contemptuous behavior in a courtroom is not protected by the constitution." *Contempt of Warriner*, 113 Mich App at 555

(rejecting the defendant's argument "that his conduct amounted to constitutionally protected symbolic speech"). And defendant's actions and remarks tended to disturb the administration of justice. *Contempt of Dudzinski*, 257 Mich App at 101-102. There was no violation of defendant's First Amendment rights.

With respect to defendant's right of allocution, MCR 6.425(E)(1)(c) provides that at sentencing, the court is required on the record to give defendants "an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]" A trial court must strictly comply with the rule, "and the trial court must separately ask the defendant whether the defendant wishes to address the court before sentencing." *People v Wells*, 238 Mich App 383, 392; 605 NW2d 374 (1999). "Where the trial court fails to comply with this rule, resentencing is required." *Id.* In the present case, the circuit court gave defendant every opportunity to allocute. However, as opposed to advising the court of the circumstances that the court should consider in imposing sentence, MCR 6.425(E)(1)(c), defendant engaged in a nonsensical rant that had absolutely nothing to do with his sentencing. The circuit court did not violate MCR 6.425(E)(1)(c); rather, defendant chose not to properly exercise his rights under the court rule. Resentencing is unwarranted.

III. CONCLUSION

In summation, defendant, being competent, forfeited his constitutional and statutory rights to be present at trial, forfeited his right to counsel, and forfeited his right to self-representation. Therefore, the alleged inadequacy of appointed counsel's performance is irrelevant. Defendant adamantly rejected counsel, self-representation, being present at trial, and presenting a defense to the charges, and we are merely honoring his wishes. We refuse to reward defendant with a new trial on the basis of his alleged constitutional wounds that were entirely self-inflicted. Furthermore, the circuit court's decision not to order a competency examination did not constitute an abuse of discretion, and the issue does not serve as a valid basis to reverse defendant's convictions on the associated claim of ineffective assistance of counsel. Next, defendant's double jeopardy argument was inadequately briefed and thus waived. Moreover, there were no double jeopardy violations with respect to the various convictions. With respect to defendant's sufficiency arguments and the convictions on three counts of resisting and obstructing an officer, the evidence was sufficient on two of the counts, and the prosecution concedes error on the third count, which conviction we vacate. Finally, defendant's First Amendment rights and his right to allocution were not violated when the circuit court held him in contempt of court.

Affirmed in part, vacated in part.

/s/ William B. Murphy
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan