*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIE JAMES CALLOWAY, JR.,

Defendant-Appellant.

UNPUBLISHED
January 28, 2020

No. 345450
Genesee Circuit Court
LC No. 17-041510-FC

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of assault with intent to do great bodily harm, MCL 750.84, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 12 to 20 years for the assault with intent to commit great bodily harm conviction and 5 to 10 years for each of the felon-in-possession convictions, to be served subsequently to three concurrent two-year sentences for each of the felony-firearm convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Deondre Watson was the victim of a non-fatal shooting in the parking lot of Chilly's Bar in Flint during the early morning hours of May 14, 2017. Watson was shot in the stomach after he exited the driver's side backseat of a car, walked around the back of the car, and approached a group of people who had gathered on the passenger side of the car. In a photographic lineup conducted in June 2017, Watson identified defendant as the shooter. At trial, several witnesses identified defendant as the shooter. When Watson was asked at trial to identify the shooter, he initially stated that he did not see the shooter in the courtroom. The trial court granted a brief recess after Watson, who had recently had surgery as a result of the shooting, indicated that he was in pain. After the recess, Watson identified defendant, stating that when he initially attempted to identify the shooter, defendant had kept his head down, preventing Watson from seeing his face. When the prosecution questioned Watson about why he was initially unable at

-1-

trial to identify defendant as the shooter, Watson responded that defendant's skin tone had changed "since he's been locked up," before further answering that he had been unable to see defendant's face. Watson also stated that he did not want to point at defendant in court because "if he's in the building what's the purpose of me pointing if y'all already got the man who committed the crime?"

The prosecution introduced surveillance video from the bar, and it was played for the jury. Defendant's defense was that the prosecution was not able to prove beyond a reasonable doubt that defendant was the shooter.

Before trial, at defense counsel's request, the trial court ordered a psychological examination of defendant at the Center for Forensic Psychiatry. On November 2, 2017, Dr. Richard Rickman prepared a report and found defendant competent to stand trial. At a pretrial hearing, defense counsel told the trial court that defendant wished to have an independent examination to further assess his competency to stand trial. The court declined to order an independent examination. A competency hearing was held on December 11, 2017. Dr. Rickman testified that he administered a personality assessment inventory test as part of his psychological testing and that the results indicated a considerable level of distortion and that defendant had willfully attempted to portray himself in an especially negative or pathological manner. Dr. Rickman testified that he had not observed any behavior indicative of a bona fide mental condition that could cause defendant to be incompetent to stand trial. The trial court found defendant competent to stand trial. Defense counsel renewed his request for an independent examination, which the court again denied; the trial court later denied defendant's motion for reconsideration.

Defendant was convicted and sentenced as described. This appeal followed.

## II. COMPETENCE TO STAND TRIAL

Defendant argues that the trial court erred by refusing to order an independent psychological examination after defendant was found competent to stand trial. We disagree.

Under MCR 6.125(D), "[o]n a showing of good cause by either party, the court may order an independent examination of the defendant relating to the issue of competence to stand trial."

The trial court has discretion whether to order an independent examination as to competence to stand trial. See *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014); *People v Smith*, 103 Mich App 209, 211; 303 NW2d 9 (1981). "An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Kammeraad*, 307 Mich App at 140 (quotation marks and citation omitted).

Defendant never made a showing of good cause. During the pretrial hearing, defense counsel merely told the court that defendant had informed him "that he wishes to have an independent evaluation done." At the competency hearing, defense counsel merely renewed his previous request. And defendant's motion for reconsideration did not raise any new issues arising after defendant's examination or after the competency hearing. Accordingly, the trial

court did not abuse its discretion when it denied defendant's requests for an independent examination relating to the issue of competence to stand trial. *Smith*, 103 Mich App at 211.[1]

## III. PROSECUTORIAL ERROR[2]

Defendant argues that he was denied a fair trial and due process as a result of prosecutorial error. We disagree. To preserve an issue of prosecutorial error, a defendant must contemporaneously object and request a curative instruction. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Defendant did object to Watson's statement that defendant had been "locked up" but did not request a curative instruction; nor did defendant identify the ground for objection as that of prosecutorial error. Defendant did not object to Watson's statement concerning defendant's guilt. We conclude that defendant did not preserve his claims of prosecutorial error. We review an unpreserved claim of prosecutorial error for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003); see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). This Court will not reverse if the prejudicial effect of the prosecution's conduct could have been cured by a timely instruction from the trial court. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

The test to determine whether alleged prosecutorial error merits reversal is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor does not commit error when a witness provides an unresponsive, volunteered answer to a proper question. See *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009).

Defendant argues that the prosecution improperly elicited testimony from Watson during his in-court identification of defendant; specifically, defendant objects to Watson's statement that defendant had "been locked up," and that "if [defendant is] in the building what's the purpose of me pointing if y'all already got the man who committed the crime?"

---

[1] We note that defendant does not explicitly challenge the trial court's finding that he was competent to stand trial. To the extent that he does so implicitly, we conclude, on the basis of the facts in the record, that the trial court did not abuse its discretion by finding that defendant was capable of "understanding the nature of the charges brought against him and capable of rationally assisting in his defense." *Kammeraad*, 307 Mich App at 140.

[2] This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that the term "prosecutorial misconduct" has become a term of art used to describe any error that has been committed by the prosecution. The *Cooper* Court concluded that claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct[,]' " such as those actions that are fraudulent or that violate the Michigan Rules of Professional Conduct. *Id*. For that reason, we will refer to defendant's claims of "prosecutorial misconduct" as "prosecutorial error."

In context, it is clear that the prosecution did not intentionally elicit these responses from Watson. The prosecution merely questioned Watson about why he was unable to initially identify defendant in court—in fact, the prosecution specifically asked Watson if there was "a certain person that was covering his face." Further, Watson's statement regarding defendant's guilt was given in response to the prosecution simply asking Watson why he didn't want to point his finger at defendant. There is nothing in the record to suggest that the prosecution knew or should have known that Watson would respond as he did. *Waclawski*, 286 Mich App at 709-710. Further, even assuming that that the testimony was prejudicial, a curative instruction, upon timely request, could have cured the error. 265 Mich App at 70-71. There was no plain error. *Abraham*, 256 Mich App at 274.

## IV. IDENTIFICATION OF DEFENDANT IN A SURVEILLANCE VIDEO

Defendant also argues that a detective improperly "stated the person in the Chilly's parking lot was in fact Appellant" while the surveillance video was being played for the jury. We agree, but find the error harmless. Defendant did not object to the detective's identification of defendant in the video. This argument is therefore not preserved. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Unpreserved nonconstitutional errors are reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763.

A lay witness's testimony is limited to opinions and inferences that are rationally based on the witness's perception and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." MRE 701. Generally, a witness cannot provide his opinion on a matter when the jury is equally capable of reaching its own conclusion on that same issue, because this invades the province of the jury. See *Heft*, 299 Mich App at 81; see also *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985); *People v Drossart*, 99 Mich App 66, 79–80; 297 NW2d 863 (1980). In *People v Fomby*, 300 Mich App 46, 49-52; 831 NW2d 887 (2013), this Court held that it was appropriate for a police officer, a forensic video technician, to testify that the individuals depicted in still photographs that he had created from a surveillance video were the same individuals depicted in the video. However, this Court distinguished that situation from one in which a police officer who has merely reviewed the same video that has been played for the jury identifies individuals depicted in a video; the testimony in the latter situation is not permissible. *Id*. at 52. In other words, a witness may not identify an individual depicted in a photograph or video when that witness is in no better position to identify the individual than is the jury. *Fomby*, 300 Mich App at 52-53.

Here, the detective testified that a person who appeared in the video played for the jury was defendant. However, even if this testimony invaded the province of the jury, the error was harmless. Several witnesses present at the time of the shooting identified defendant as appearing in the surveillance video. Defendant did not object, and does not, on appeal, claim any error in that regard. Watson and other witnesses also made in-court identifications of defendant. And the jury was given the opportunity to view the video for itself. The detective's statement was merely cumulative of other identification evidence at trial and defendant has not demonstrated plain error requiring reversal. *Carines*, 460 Mich at 763.

## V. FLIGHT INSTRUCTION/INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court erroneously instructed the jury regarding his post-offense flight. This issue is waived because defense counsel expressed satisfaction with the instructions as given. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011); *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Defendant offers the cursory argument in the alternative that his counsel was ineffective for failing to object to the instruction. We disagree.

"[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003), lv den 469 Mich 987 (2003). Therefore, "[t]he trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014).

The trial court instructed the jury on flight in accordance with the model jury instruction, M Crim JI 4.4:

> There's been some evidence that the Defendant fled the scene after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true and if true whether it shows the defendant had a guilty state of mind.

A witness testified that after the shooting she and defendant "took off straight out of there." Defendant does not argue that he did *not* flee the scene; rather, he merely argues that everyone present fled the scene after the shooting. The fact that defendant offers an "innocent reason" for his flight, as is explicitly contemplated by the jury instruction, does not change the fact that the evidence supported the instruction. *Armstrong*, 305 Mich App at 240. Defendant's counsel was not ineffective for failing to raise a futile objection to the proposed jury instruction. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), lv den 488 Mich 1045 (2011).

## VI. OFFENSE VARIABLE 4

Finally, defendant argues that the trial court incorrectly assessed 10 points for offense variable (OV) 4 at sentencing. We disagree. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated in *People v Rodriguez*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338914); slip op at 3 n 3. "Whether the facts, as found, are adequate to satisfy the scoring condition prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. A trial court's findings are clearly erroneous if, after review of the record, this Court is "definitely and firmly convinced" that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014).

OV 4 considers psychological injury to a victim. MCL 777.34. The statute provides for a score of 10 points "if serious psychological injury may require professional treatment," and

"the fact that treatment has not been sought is not conclusive." MCL 777.34(2). The trial court must assess zero points for OV 4 when "[n]o serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(b). "Serious" means "having important or dangerous possible consequences[.]" *People v Wellman*, 320 Mich App 603, 610; 910 NW2d 304 (2017) (extending the Michigan Supreme Court's analysis of OV 5 to analysis of OV 4) (quotation marks and citations omitted; alteration in original). However, a court cannot assume the existence of psychological injury merely on the basis of the circumstances of the crime, and a mere expression of fearfulness is insufficient to support a 10-point score for OV 4. *People v White*, 501 Mich 160, 163-165; 905 NW2d 228 (2017).

The trial court assessed 10 points for this variable on the basis of its finding that the victim suffered serious psychological injury. We conclude that a preponderance of the evidence supported this score. Although the trial court made references to the fear that Watson would have felt during the crime, it also noted Watson's victim impact statement, in which Watson stated in relevant part, "now I'm scared for life and I don't have a clue to why I was a victim of a crime that I was not aware of so there for [sic] it affected life [sic] and my living every day where I was at in my life before [sic] crime[.]" Unlike the victim in *White*, 501 Mich at 163-165, Watson's statement reflects his ongoing trauma and fear resulting from the crime, not merely his fear during the offense. Watson's statement makes it clear that his mental health continues to be affected as a result of the shooting. We conclude that the trial court did not err by determining that serious psychological injury had occurred. *Wellman*, 320 Mich App at 610.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel
/s/ Anica Letica