*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDREW DAVID GRANT,

Defendant-Appellant.

UNPUBLISHED
January 09, 2025
2:30 PM

No. 368658
Livingston Circuit Court
LC No. 2022-027466-FH

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of carrying a concealed weapon (CCW), MCL 750.227, and possession of a dangerous weapon (silencer), MCL 750.224(1)(a).[1] Defendant was sentenced to concurrent terms of 6 months' probation for each conviction. We vacate defendant's conviction and remand for additional proceedings.

## I. BACKGROUND

Defendant acted *in propria persona*, and this appeal revolves entirely around his lack of representation. Accordingly, the facts underlying the offense are not relevant to this appeal. Defendant initially retained Donald Neville, who filed his appearance on July 18, 2022. However, defendant subsequently filed a motion to have Neville withdraw, and the court allowed the withdrawal due to a "breakdown in communication" at a hearing on September 8, 2022. Defendant expressed uncertainty regarding whether he could afford a new attorney despite having spent $8,000 on Neville, explaining that he was "currently not employed" because he was "between contracts." Defendant was determined to be eligible for a public defender, and the Buttrey Law Office was appointed to represent him on September 26, 2022.

---

[1] Defendant was also charged with stalking, MCL 750.411h, the jury found him not guilty of this charge.

William Livingston represented defendant for several months, but defendant retained Bradley Friedman on March 29, 2023. However, on May 12, Friedman informed the court that he wished to withdraw. On June 2, he filed a motion to that effect. A hearing was conducted on June 9, within a week of defendant's trial date, and Friedman explained that there was "a breakdown in communication" following "a major argument about strategy" in the case. Friedman explained that he and defendant had "a significant difference of opinion in overall case strategy" and that he was "uncomfortable with how [defendant] want[ed] to proceed." Defendant indicated that Friedman demanded that defendant accept a plea agreement and that Friedman was unwilling to proceed to trial. The trial court was initially reluctant to grant a withdrawal request so close to trial. Defendant stated that he could not afford to retain a new attorney because he had lost his job, so he needed to seek another public defender. The trial court said:

> I don't believe that you needed a public defender. . . . I don't believe that you have zero in savings. . . . The question is if I release this attorney . . . I don't know what to tell you. You're not going to be able to keep an attorney and yourself out of trial. Do you understand that? . . . [Y]ou have a trial on Monday. Are you ready? Do you want to represent yourself?

Defendant indicated that he did not want to represent himself. At a hearing on June 16, 2023, defendant informed the court that he had applied for a public defender, he was awaiting income verification, that he lost his job in April, and that he found temporary employment paying $25 an hour. Defendant testified to having significant expenses arising from having two kids in college. The court adjourned defendant's trial so that he could seek an attorney.

Defendant was denied a public defender on June 20, 2023, because he was not eligible. At a hearing on June 23, defendant explained his poor financial situation and indicated that he had obtained the information needed to prove his eligibility. However, defendant was once again denied a public defender on June 28, 2023. A pretrial hearing occurred on July 14, 2023, and defendant appeared *in propria persona*. The trial court stated that the situation "has gotten kind of ridiculous" and expressed a sense of urgency to proceed to trial. The court told defendant that he was free to represent himself if he so chose, but defendant clarified: "It would not be my preference to proceed that way, but . . . I don't have the funds to hire an attorney. There's been miscommunication between myself and the public defender's office." The trial court stated: "You need to get another job. You need the money if you're going to hire your own attorney." The court continued:

> [Y]ou've been on this slow path. And pretty soon, you're going to be lodged until your jury trial unless you get an attorney. I'd like you to get an attorney. If you don't have the wherewithal to get an attorney, then we will continue without an attorney, but then you represent yourself. And you are told that you're acting as an attorney; you'll have to read the rules and present evidence, witnesses, et cetera. . . ."

Defendant insisted that he was attempting to find additional work, and the trial court clarified:

> I don't care where you work, get another job if you need an attorney and you don't have the funds. I expect you to work at Burger King if necessary. . . . I have no

problems with you getting another job but this is ridiculous. I mean, we've been doing this for years now. This case . . . was authorized, I guess, in [20]22. And we've gone from one attorney to another. And I'm not blaming you for your first attorney, but then you had another attorney and that attorney said there was a breakdown in communications and I allowed him to withdraw. So[,] there were two instances where you were able to afford an attorney. We need to get this case heard.

The trial court also noted that defendant was living at his sister's house and not paying rent. The court then stated that "people usually have savings." Defendant offered to show the court his bank statements; however, the court declined this offer, reasoning that defendant "could show [the court] one bank statement and it's empty and another bank statement that wouldn't be." The court also declined defendant's offer to present his "correspondence with the public defender's office trying to get this taken care of" because the court was "not in the middle of that." Defendant told the court that he only had $217 in his checking account and that he did not anticipate it would be possible to retain an attorney. Regarding the public defender's denial of defendant's request, the trial court stated: "[Y]ou've got to do something else. Go to plan B." The court then reminded defendant that he was previously held in contempt for playing golf while appearing remotely at a hearing, stating that "[n]ot very many indigent people can afford to play golf."

The trial court held a pretrial hearing on August 4, 2023, and defendant again appeared *in propria persona*. When asked if he planned to proceed without an attorney, defendant stated: "[I]t looks like I'm going to have to. I haven't been able to secure an attorney." Defendant indicated that he filed his paperwork with the public defender's office a day late, so they did not review the additional information he submitted. Defendant explained he found employment and was working "between 35 and 45" hours weekly for $20 an hour. Defendant then explained his expenses, which included his car payment, car insurance, phone bill, and some support provided to his college-age children. The court did not consider his children to be a valid expense because defendant was no longer legally obligated to support them. Defendant estimated that he had spoken with "between 12 and 20" attorneys, but none were willing to take his case. The court, noting that defendant "appear[ed] to have enough money to hire an attorney," criticized defendant for calling attorneys rather than physically going to their offices to request representation. The trial court stated: "I'd like to know how you're going to do your opening statement, voir dire, and get in evidence and present witnesses without having an attorney." Defendant replied, "I've been reading up on how to do it." The trial court asked if defendant was comfortable representing himself, and defendant answered: "No, I don't feel comfortable, but I don't have another option." Then the court interjected to say that defendant is "not that destitute," and defendant said "Your honor, calling attorneys and saying that I've got a trial on Monday and by the way, I don't have even $1,000 to give you as a retainer, nobody wants to hear about it."

The trial finally proceeded on August 28, 2023, and the court appointed William Livingston to serve as advisory counsel for defendant. At the start of his opening statement, defendant said, "I have no idea what I'm doing. . . . When the Court says that I'm exercising my right to defend myself, this is not my choice to defend myself." The prosecution objected, and the court chastised defendant in the presence of the jury:

[T]hat's totally inappropriate. We've given you every opportunity to retain or get your own attorney. You said no. You wanted to represent yourself. That's the reason you're here today, representing yourself. I did assign Mr. Livingston to be . . . extra cautious. It's your right to try the case by yourself. You can't tell the jury, oh, this isn't my decision; it was your decision. I don't know why you said that because I think this case has been going on for years. And I think I made it very clear to you or tried to make it clear to you to get an attorney; get an attorney if you want one; get an attorney if you want one. So don't tell the jury that this isn't your choice. It was your choice.

Defendant was ultimately found guilty as described above, and this appeal followed.

## II. ANALYSIS

Defendant did not waive his right to the assistance of counsel, and the record before us does not establish that defendant forfeited his right to the assistance of counsel. Therefore, defendant's conviction must be vacated.

Whether a criminal defendant's right to counsel has been violated is a constitutional question that we review de novo. *People v Hieu Van Hoang*, 328 Mich App 45, 54; 935 NW2d 396 (2019).

The United States and Michigan Constitutions each guarantee a criminal defendant the right to counsel at every critical stage of the criminal proceedings. *Hieu Van Hoang*, 328 Mich App at 55. Criminal defendants are likewise entitled to waive the right to counsel and proceed *in propria persona*. Prior to allowing a defendant to waive the right to counsel, the trial court must find (1) that the request was unequivocal; (2) that the defendant's assertion of the right to proceed without counsel was knowing, intelligent, and voluntary; and (3) that the decision to proceed without counsel "will not disrupt, unduly inconvenience[,] and burden the court and the administration of the court's business." *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). Additionally, the court must comply with MCR 6.005(D), which provides in relevant part:

The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

"[T]rial courts must substantially comply with the requirements of *Anderson* and MCR 6.005(D)." *People v Williams*, 470 Mich 634, 656; 683 NW2d 597 (2004). "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *People v*

*Adkins (After Remand)*, 452 Mich 702, 726-727; 551 NW2d 108 (1996), overruled in part on other grounds *Williams*, 470 Mich at 641 n 7. "[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *People v Russell*, 471 Mich 182, 191-192; 684 NW2d 745 (2004).

Despite insisting in the jury's presence that defendant freely chose to represent himself, it is undisputed that the court did not substantially comply with *Anderson* and the court rule. The court did repeatedly advise defendant regarding "the risk involved in self-representation," and the court afforded numerous opportunities to consult with private attorneys or seek representation from a public defender. See MCR 6.005(D). However, this was not done during "a short colloquy" as directed by the Supreme Court in *Adkins*, 452 Mich at 726-727. Further, the court did not make any inquiry into the three requirements for waiver of the right to counsel articulated by the Supreme Court in *Anderson*. Had the *Anderson* inquiry been conducted, the first requirement would not have been met because defendant's statements regarding self-representation were always equivocal and based on the belief that he had no other choice.

While defendant did not waive his right to counsel, this Court held in *People v Kammeraad*, 307 Mich App 98; 858 NW2d 490 (2014), that the right to counsel can be forfeited.[2] In that case, the defendant refused to participate in the proceedings in any way, to accept the assistance of a public defender, to represent himself, and to cooperate or communicate in any way with any appointed attorneys. *Id*. at 126. In the context of this "unique situation," this Court concluded that the "defendant's constitutional protections were forfeited and there was no constitutional obligation to impose a court-appointed attorney upon the unwilling defendant." *Id*. at 126-127. This Court also acknowledged the possibility that a forfeiture could occur if "a defendant is warned that he or she will lose counsel if the defendant engages in dilatory tactics, with any misconduct thereafter being treated as an implied request for self-representation." *Id*. at 133.

> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. [*Id*. at 134 (quotation marks and citation omitted).]

---

[2] We note that forfeiture in this context is not the same type of forfeiture as was discussed by the Supreme Court when it decided *People v King*, 512 Mich 1; 999 NW2d 670 (2023). In *King*, the Supreme Court held that a criminal defendant cannot forfeit the right to counsel. *Id*. at 12-17. However, the term was used in that case to refer to "the failure to make the timely assertion of a right" in the context of the plain error rule. *Id*. at 15 (quotation marks and citation omitted). The Supreme Court held in *King* that "a defendant who did not make a knowing and intelligent waiver of the right to counsel" did not need to "object to their own waiver" in order to preserve the issue for appellate review. *Id*. at 14-15. Therefore, while the Supreme Court used the term "forfeiture" when deciding *King*, the term was used in a different context, and *King* is not applicable here.

This Court concluded by warning "that a finding of forfeiture of this venerable constitutional right should only be made in *the rarest of circumstances* and as necessary to address *exceptionally egregious conduct*." *Id*. at 137 (emphasis added).

The prosecution contends that defendant forfeited his right to counsel by engaging in dilatory conduct. Specifically, the prosecution faults defendant for perpetually failing to retain an attorney despite repeated warnings that doing so would lead to self-representation. The prosecution's position is not supported by the record. Instead, the record before this Court suggests that defendant was caught between a rock and a hard place because he was unable to establish eligibility for a public defender but also unable to pay a private attorney's retainer. While nothing in the record suggests that the aim was to delay the proceedings, defendant was certainly responsible for the first few months of delay due to attorney turnover. Defendant requested the withdrawal of his initial attorney, who was retained in July 2022, after less than two months due to communication issues. This attorney was replaced with a public defender. Approximately six months later, defendant dismissed this attorney in favor of Bradley Friedman, whom defendant retained. Nevertheless, trial was scheduled for June 2023, and defendant was prepared to proceed.

The wheels came off on June 2, 2023, when Friedman moved to withdraw within a week of trial on the basis of feeling "uncomfortable" with defendant's preferred strategy. The court could have denied Friedman's motion to withdraw and ordered him to continue representing defendant, but it instead granted the motion and adjourned the trial. This was the beginning of a months' long cycle of defendant reporting to the court that he was denied by the public defender office and turned down by private attorneys. Despite the prosecution's assertion that defendant was engaging in dilatory conduct to draw out the proceedings and delay the trial, defendant's statements that he contacted dozens of attorneys but could not get anyone to take the case went unrebutted. Despite openly questioning defendant's credibility, the court did nothing to assess the veracity of defendant's statements.[3]

Additionally, it is clear from the record that defendant was repeatedly and persistently attempting to obtain the assistance of a public defender. By no means do we suggest that a well-off defendant can indefinitely postpone his trial by repeatedly submitting futile applications for a public defender, but the record was bereft of information regarding why he was being turned away. Defendant at one point came to court with the information he had been providing to the public defender office, but the court declined to examine this documentation because it did not view assessment of his eligibility as its proper role. There likewise is nothing in the record regarding the possibility that the court could have ordered the public defender office to appoint an attorney then subsequently order defendant to compensate the public defender office upon completion of a closer examination of his finances.

It is well-established that publicly-funded attorneys are only available to criminal defendants who are indigent. Clearly, a person who refuses to retain an attorney despite not being

---

[3] The court did ask defendant at one point if he had a list of the attorneys he had contacted. Defendant indicated that he did have such a list but left it at home because he did not know he would be asked to produce it.

indigent and also refuses to act pro se would forfeit the right to counsel. The trial court believed defendant to fall within this category, and it is certainly possible that he does,[4] but the record is not sufficient to support such a finding. The record regarding defendant's income was spotty, and it appears as though his employment status varied throughout the pendency of this case. However, the record does establish that defendant lost his high-paying job around the outset of this case, and there is nothing in the record disputing the fluctuating wage information that defendant provided over the course of the proceedings. There is likewise nothing in the record regarding defendant's assets aside from his own statements regarding the balances in his bank accounts. When defendant offered to produce bank statements, the court refused to examine them on the basis of its assumption that he would conceal records from other, more lucrative accounts. Early in the proceedings, defendant made the poor decision to appear remotely for a hearing while playing golf, and the court repeatedly referenced this incident as proof that defendant was not indigent. However, while the court was justifiably infuriated by this disrespect for judicial proceedings, common sense suggests that it does not follow from the ability to pay for a round of golf that a person can also pay to retain an attorney. In sum, while it is possible that defendant could afford an attorney but delayed the proceedings by perpetually failing to retain one, the record before us is insufficient to support such a finding.

## III. CONCLUSION

In conclusion, defendant did not waive his right to the assistance of counsel, and the record does not support the conclusion that this right was forfeited. Therefore, we vacate defendant's convictions and remand for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado

---

[4] Notably, defendant has a court-appointed attorney in this appeal.