*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 19, 2025
11:24 AM

Plaintiff-Appellee,

v

No. 369204
Montcalm Circuit Court
LC No. 2023-030032-FH

JUSTIN ALAN LAMARTE,

Defendant-Appellant.

Before: RICK, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of resisting and obstructing a police officer (resisting and obstructing), MCL 750.81d(1), and assaulting, resisting, or obstructing a police officer causing injury (resisting causing injury), MCL 750.81d(2). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 58 months to 15 years' imprisonment for the resisting and obstructing conviction, and 15 months to 15 years' imprisonment for the resisting causing injury conviction. The trial court ordered that the sentences be served consecutive to each other, as well as to a parole sentence that defendant was serving in an unrelated matter. We reverse and remand for a new trial.

## I. FACTUAL BACKGROUND

This action arises from an altercation that occurred between defendant and two Greenville, Michigan police officers in March 2023. Officer William Hatfield testified that he responded to a call from Central Dispatch about a person—later identified as defendant—who was attempting to flag down vehicles for a ride to Grand Rapids. The caller thought that defendant's behavior was odd and requested a welfare check. Upon locating defendant, Officer Hatfield got out of his patrol car, greeted defendant, and asked defendant for identification, which defendant provided. Officer Hatfield asked Central Dispatch to run defendant's information through the Law Enforcement Information Network (LEIN). Officer Hatfield estimated that a LEIN check usually takes 10 to 15 minutes to complete, so while he was waiting, he continued talking with defendant. During the conversation, Officer Hatfield asked if defendant would consent to a search. Defendant initially agreed, but then attempted to walk away, at which point Officer Hatfield told him, "We're not

done talking." Officer Hatfield intended for defendant to stay and talk to him until he received the LEIN results. Officer Hatfield clarified that when he said, "We're not done talking," defendant stopped voluntarily; he did not physically restrain defendant or otherwise force him to stop.

While Officer Hatfield was waiting for the LEIN results, Sergeant Steven DeWitt arrived as backup. Sergeant DeWitt stated that he parked his patrol car in front of where defendant and Officer Hatfield were standing. He explained that he did so "because you have to worry about other traffic. We're in the street, so you have to worry about other cars, so I parked at an angle." The results of the LEIN check showed that defendant had active warrants out for his arrest. Officer Hatfield informed defendant about the warrants and told him that he was being taken into custody. As Officer Hatfield and Sergeant DeWitt attempted to handcuff defendant, he pulled away to avoid being handcuffed. A physical altercation ensued, resulting in all three men falling to the ground.[1] The officers eventually handcuffed defendant. Officer Hatfield testified that the fight likely lasted less than a minute and that defendant "threatened to Tase us with our own Tasers" during the struggle.

Sergeant DeWitt testified that while Officer Hatfield was attempting to handcuff defendant, defendant forcefully pulled away and attempted to run. Sergeant DeWitt grabbed for defendant's clothing in an attempt to stop him, and stated that all three men went "down [o]n the ground as a—a pile. I mean, we just, its [sic] dead weight, we go to the ground." After defendant was placed in handcuffs, the officers called an ambulance to check defendant and Sergeant DeWitt for injuries, as both men had bloody noses from the fight. Emergency medical technicians verified that defendant was not seriously injured. Defendant was then taken to jail. Sergeant DeWitt testified that he later went to the hospital, where he was diagnosed with a torn meniscus in his knee that ultimately required surgery.

Defendant was charged with one count of resisting and obstructing a police officer and one count of resisting causing injury. Prior to trial, the court ordered defendant to undergo a competency evaluation at the Center for Forensic Psychiatry. Defendant was found competent to stand trial. Defendant's trial lasted one day. He was convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. REASONABLE SUSPICION

Defendant first argues that his convictions should be vacated because the police lacked reasonable suspicion to conduct a warrantless investigatory stop. We disagree.

---

[1] The presentence investigation report indicates that while defendant was on the ground, the officers noticed he had dropped a silver handgun, which was later identified as a CO2-fueld pneumatic handgun. No testimony about the handgun was offered at trial.

We review a lower court's factual findings for clear error. *People v Pagano*, 507 Mich 26, 31; 967 NW2d 590 (2021). Questions of law, including the application of constitutional standards, are reviewed de novo. *Id*.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

Analogously, the Michigan Constitution provides that "[t]he person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures." Const 1963, art 1, section 11. Generally, "a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (quotation marks and citation omitted).

"Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). One such exception is an investigatory stop, also known as a *Terry* stop. See *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Our Supreme Court has described the *Terry* stop as follows:

> Under certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior. [*People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005) (quotation marks and citations omitted).]

However, a *Terry* stop does not automatically occur every time a police officer approaches a citizen. *Jenkins*, 472 Mich at 32. For Fourth Amendment purposes, a "seizure" only occurs if, given the totality of the circumstances, "a reasonable person would have believed that he was not free to leave. When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized." *Id*. (citations and footnotes omitted). The citizen must voluntarily consent to speak with the officer, and "[t]he presence of coercion or duress normally militates against a finding of voluntariness." *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999). Certain circumstances might still constitute a seizure even if the citizen does not attempt to walk away from or otherwise disengage with the officer, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language

or tone of voice indicating that compliance with the officer's request might be compelled." *People v Sinistaj*, 184 Mich App 191, 196; 457 NW2d 36 (1990) (quotation marks and citation omitted).

The stop conducted by Officer Hatfield in this matter was reasonable under the Fourth Amendment. As earlier noted, a police officer may approach an individual in a public place and ask questions or request identification without implicating the Fourth Amendment, as long as a reasonable person would feel free to leave. *Jenkins*, 472 Mich at 32. Here, defendant voluntarily provided his ID and engaged in conversation with Officer Hatfield, which indicates that, at least at first, the encounter was consensual. The Fourth Amendment was not implicated until Officer Hatfield told defendant, "We're not done talking," after defendant attempted to walk away. At that point, the encounter transitioned into a seizure under the Fourth Amendment because a reasonable person would no longer feel free to leave. *Sinistaj*, 184 Mich App at 196.

However, contrary to defendant's argument, Officer Hatfield's decision to stop defendant after he attempted to walk away was a valid *Terry* stop. *Terry* allows for a brief investigatory stop if the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Jenkins*, 472 Mich at 32. Officer Hatfield was responding to a call about suspicious behavior, and defendant's actions—initially consenting to a search and then suddenly attempting to leave—reasonably contributed to Officer Hatfield's suspicion. Our Supreme Court. has held that such circumstances, when viewed in their totality, can justify a *Terry* stop. See *Jenkins*, 472 Mich at 34-35 (finding that a *Terry* stop was valid when the defendant began acting nervous during a LEIN check and attempted to walk away from the police).

Once Officer Hatfield received the LEIN check results and learned of the outstanding warrants for defendant's arrest, the detention and subsequent arrest were lawful. An officer may arrest an individual without a warrant if the officer has received reliable information about an outstanding warrant. See MCL 764.151(1)(e) (stating that an officer may make an arrest without a warrant if they "receive[] positive information by written, telegraphic, teletypic, telephonic, radio, electronic, or other authoritative source that another peace officer or a court holds a warrant for the person's arrest"). The discovery of the warrants in this matter provided a valid basis for defendant's arrest, regardless of the circumstances leading up to the discovery. Defendant is not entitled to relief on Fourth Amendment grounds.

## B. CREATION OF EVIDENCE

Defendant next argues that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to turn over the evidence to the defense. He further argues that the officers violated *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), by failing to create a recording of the incident. Defendant also contends that his defense counsel was ineffective for failing to request an adverse-inference jury instruction regarding the missing evidence. We disagree.

Defendant did not preserve his *Brady* and *Youngblood* claims by raising those issues in the trial court. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Our review is thus for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain

-4-

error affected substantial rights." *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Defendant likewise did not preserve his ineffective-assistance claim by moving for a *Ginther*[2] hearing or a new trial on that basis. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). We thus review the matter for errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

At trial, Officer Hatfield and Sergeant DeWitt testified regarding the incident leading to defendant's arrest, as earlier described. On cross-examination, Officer Hatfield testified that his patrol car is equipped with a dash cam, but the dash cam did not activate during his interaction with defendant. Officer Hatfield explained that he can turn the camera on by turning the patrol car's lights on, by pressing a button inside the car, or by pressing a button on a microphone pack that he carries with him. Officer Hatfield stated that he pressed the button to record on his microphone pack, but the recorder failed to activate.

Sergeant DeWitt confirmed that officers are trained to use in-car camera systems, which are required to be activated during citizen contacts. He stated that he activated his own dash cam by turning on his patrol car lights when he arrived, but the audio from his microphone pack was not clear and his patrol car was parked on an angle for safety reasons. Sergeant DeWitt further stated that after the scuffle with defendant, he picked a microphone pack off the ground, believing that it was his, and turned it on. He later determined that the microphone pack belonged to Officer Hatfield. Sergeant DeWitt conceded on cross-examination that Officer Hatfield had failed to turn on his recording system. However, he said that he understood why Officer Hatfield might not have realized that his recording system was not working, noting that the only indication that a microphone pack is working is a small, blinking green light. Sergeant DeWitt described the button to activate the system as small and recessed, suggesting that Officer Hatfield may not have pressed it hard enough to start the recording. Thus, no clear audio or visual recording of defendant's arrest exists.

Under *Brady*, " 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. To establish a *Brady* violation, defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 149 (quotation marks omitted). It is undisputed that the evidence defendant seeks on appeal never existed in the first instance. Thus, there was no evidence for the prosecution to suppress. *Brady* is not the appropriate framework under which to review this issue, and defendant's argument to the contrary lacks merit.

As to defendant's argument that the police violated *Youngblood* by failing to record the incident leading to his arrest, the failure of police to create a recording of an interaction with a

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

defendant that leads to the defendant's arrest does not automatically constitute a violation of the defendant's due process rights. It is the defendant's burden to show that the police acted in bad faith. *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017). The *Youngblood* Court specified that a defendant's due process rights are not violated "when the police fail to use a particular investigatory tool." *Youngblood*, 488 US at 58-59.

Michigan caselaw likewise does not support the notion that the failure to create a record of an incident constitutes a due-process violation. In *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006), our Supreme Court observed that, "[f]or due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." In *Anstey*, the defendant sought to have an independent drug test done at a hospital, but the arresting officer declined to allow him to do so. *Id*. at 460. The *Anstey* Court found *Youngblood* inapplicable in that context "[b]ecause the instant case involves the failure to *develop* evidence, as opposed to the failure to disclose existing evidence." *Id*. (emphasis added). The *Anstey* Court thus held that there is no due process violation for failing to develop evidence not already in the government's possession. *Id*. Defendant points to no binding authority to support the argument that due process required the officers to create a recording of the incident leading to his arrest. Further, he has not presented evidence that the officers acted in bad faith by failing to record the incident. The testimony indicated that Officer Hatfield attempted to turn on his camera system by pressing the button to record on his microphone pack, but the recorder failed to activate. Sergeant DeWitt properly activated his recording system, but the audio was unclear and the angle of his car did not allow for dashcam footage. At most, the failure to record the incident in this matter was accidental, rather than outright bad faith or intentional inaction. Based on the foregoing, defendant cannot establish that his constitutional due-process rights were violated, *id*., and he has not established plain error, *Carines*, 460 Mich at 763.

Defendant additionally argues that defense counsel was ineffective for failing to request an adverse-inference jury instruction, which would allow the jury to infer that the missing video evidence would have been favorable to defendant. A defendant who seeks to establish a claim of ineffective assistance of counsel must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel is presumed to be effective and defendant bears the burden of proving otherwise. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). Defendant likewise bears the burden to establish the factual predicate for the claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant argues that the evidence would have corroborated his version of events, but that is pure speculation. Defendant presents no evidence, apart from his own trial testimony, to support the contention that his arrest was unlawful or that he was not injured in the course of resisting arrest. In addition to defendant's testimony, defense counsel cross-examined both officers regarding the failure to record the incident. By doing so, defense counsel sought to elicit testimony from which a jury could infer that the officers intentionally avoided recording the incident or acted in bad faith. A defendant is only entitled to an adverse-inference jury instruction if they can show that the failure to produce the evidence was a result of bad faith. *People v Davis*, 199 Mich App 502, 514-515; 503 NW2d 457 (1993), overruled on other grounds by *People v Grissom*, 492 Mich 296, 319-320; 821 NW2d 50 (2012). Defendant has not shown that the officers acted in bad faith.

He thus cannot establish the factual predicate for his claim. Further, defense counsel made a concerted effort to cross-examine the officers regarding the missing footage, in an effort to demonstrate that the failure to record may have been intentional. The jury convicted defendant regardless. Given the foregoing, is unlikely that an adverse-inference instruction would have changed the outcome of the case. Defendant thus cannot show that he was prejudiced by counsel's failure to request that instruction.

## C. PROSECUTORIAL MISCONDUCT[3]

Defendant argues that the prosecutor engaged in misconduct at several points during trial. He also argues that defense counsel was ineffective for failing to object to one of the instances of prosecutorial misconduct. We agree in part.

**"**In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions[.]" *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted). Defendant raises several separate instances of alleged prosecutorial misconduct, including: (1) questioning Officer Hatfield about whether he participates in the Shop With a Hero community outreach program; (2) questioning the police witnesses regarding whether they knew defendant prior to his arrest in the instant matter; (3) questioning defendant about a prior conviction for resisting and obstructing a police officer; and (4) making statements during closing argument regarding defense counsel's contention that the police had a vendetta against defendant. Defense counsel only objected to the prosecutor's questioning regarding the officers' prior contacts with defendant and defendant's prior conviction. The issue is thus only partially preserved. This Court reviews preserved claims of prosecutorial misconduct "de novo claims of prosecutorial misconduct to determine whether [a] defendant was denied a fair and impartial trial." *People v Loew*, 340 Mich App 100, 125; 985 NW2d 255 (2022) (quotation marks and citation omitted). Unpreserved claims of prosecutorial error are reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763. This Court reviews defendant's unpreserved ineffective-assistance claim for errors apparent on the record. *Unger*, 278 Mich App at 253.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's [actions] in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Bahoda*, 448 Mich 261, 262; 531 NW2d 659 (1995) (citation omitted; alteration in original). "Prosecutors have discretion on how to argue the facts and reasonable

---

[3] "[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011).

Defendant first argues that the prosecutor erred by asking Officer Hatfield about his participation in the Shop With a Hero program, which Officer Hatfield described as a holiday community outreach program for children. A prosecutor's irrelevant question to a police officer about participation in a community outreach program for children does not automatically constitute prosecutorial misconduct; rather, it is only considered misconduct if, in context, it denies the defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63. Defendant makes no attempt to explain why this line of questioning was prejudicial. This argument has thus been abandoned. See *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). Even if that were not the case, there is no indication that the prosecutor's questioning regarding Officer Hatfield's community duties as a police officer denied defendant a fair trial. Defendant cannot establish plain error in regards to this argument. *Carines*, 460 Mich at 763.

Defendant likewise cannot establish plain error with regard to the prosecutor's closing argument. Defendant maintains that the following statement denigrated defense counsel and was unfairly prejudicial:

> But there's no evidence of some conspiracy or that this was some kind of vendetta or anything else. This is—as far I'm concerned, this is crazy talk. That's what that is, it's crazy talk. Without some proof, come forward and give us proof.

When read in context, it is clear that the prosecutor was not attempting to denigrate defense counsel. Instead, the prosecutor was responding to an argument made in defense counsel's closing statement, in which she stated, "[Defendant had] clearly, we now know been involved with these officers before, if you were wondering what a motive might be for—for cops to treat someone that way. That could be it, ladies and gentlemen." By responding to this statement, the prosecutor was merely addressing a weakness in defense counsel's stated theory of the case, which does not constitute prosecutorial misconduct. See *People v Clark*, 330 Mich App 392, 435; 948 NW2d 604 (2019) (stating that it is not misconduct for a prosecutor to "comment[] on the weakness of the defense theory of the case"). Defendant thus cannot show plain error in relation to this argument.

Alternatively, defendant argues that his trial counsel was ineffective for failing to object to the prosecutor's remarks during closing argument. For the reasons discussed above, defendant has not established that these remarks rose to the level of prosecutorial misconduct. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Accordingly, defendant cannot establish the factual predicate for his claim. *Hoag*, 460 Mich at 6.

Defendant next argues that the prosecutor committed misconduct by asking the officers whether they knew defendant, and by asking defendant to testify regarding a prior conviction for resisting and obstructing a police officer. The prosecution asked Officer Hatfield the following questions:

*Q.* Okay. Now, earlier you had indicated to us that you—when you got the ID, you were familiar already with—with [defendant]?

*A.* Yes, sir.

*Q.* Without getting into details, this is because you had other incidents with him?

Defense counsel objected to the questioning, and the prosecutor agreed to move on. Officer Hatfield never answered the question.

During Sergeant DeWitt's testimony, the prosecutor asked:

*Q.* Okay. You aware of [defendant]?

*A.* Yes.

*Q.* This from prior personal experience?

*A.* No . . . . I don't recall having a personal contact with him, but it's from multiple police reports that I review and read.

Finally, the prosecutor asked defendant the following question regarding his parole status:

*Q.* You don't remember if you were ever in trouble with [the police] before?

*A.* No.

*Q.* Well, how about I ask you this, what are you on parole for?

*A.* Is that relevant? Is that relevant?

Defense counsel objected. The trial court initially sustained the objection, but ultimately overruled the objection after a brief off-the-record conference. Defendant went on to testify that he was on parole for resisting and obstructing causing injury in relation to a prior incident with another Greenville police officer.

Evidence of a prior conviction is generally regarded as prejudicial to the accused because there is a danger that the jury "will misuse prior conviction evidence by focusing on the defendant's general bad character, rather than solely on his character for truthtelling." *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). However, reference to a defendant's prior criminal record or parole status is not improper when it introduced for a purpose other than propensity, such as to attack a defendant's credibility. See *People v Coffey*, 153 Mich App 311, 313; 395 NW2d 250 (1986), overruled in part on other grounds by *People v Hernandez-Garcia*, 477 Mich 1039; 728 NW2d 406 (2007).

The prosecutor never indicated that he sought to attack defendant's credibility by eliciting testimony regarding his prior conviction for resisting and obstructing a police officer. It appears

from our review of the record that the prosecutor's line of questioning to the officers regarding the officers' prior contact with defendant served no other purpose than to suggest to the jury that defendant was a bad actor who had a propensity for repeatedly engaging in violent altercations with members of the Greenville Police Department. The inflammatory nature of this evidence was an "exceptional circumstance" where "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital . . . that the practical and human limitations of the jury system cannot be ignored." *Allen*, 429 Mich at 573, 608. Further, no limiting instructions regarding the evidence were given to the jury, meaning there was no effort to ameliorate the prejudicial effect of the testimony in this matter. See *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) ("Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors.") (quotation marks and citation omitted).

While we thus conclude that the prosecutor's questioning regarding defendant's parole status and prior convictions was improper, our analysis does not end there. Rather, we must next determine whether the introduction of this improper propensity evidence constituted harmless error. *People v Denton*, 500 Mich 385; 902 NW2d 306 (2017). In *Denton*, the defendant was charged with assault with intent to do great bodily harm less than murder, MCL 750.84. *Denton*, 500 Mich at 389. The defendant had previously been convicted of the same offense in 2002 in relation to an incident involving a different victim and an entirely different set of circumstances. *Id.* at 392. Finding that the prosecutor impermissibly introduced evidence of the 2002 incident as improper propensity evidence, our Supreme Court acknowledged that the next step in analysis is application of the harmless error test. *Id.* at 409. The Court explained that "a preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Id.* (quotation marks, citations, and footnote omitted). Further, it stated that the focus of the harmless error test is on the nature of the error, which is to be assessed "in light of the weight and strength of the untainted evidence." *Id.* at 409-410 (quotation marks and citation omitted). Applying that analysis, the Court found that the evidence was highly prejudicial and that the defendant was entitled to a new trial. *Id.* at 414.

In this case, we find that the admission of error was not harmless. Just like in *Denton*, defendant's prior conviction here involved a different victim and a different set of circumstances. And as was the case in *Denton*, the only purpose of admitting the testimony at issue was to convince the jury that defendant was an aggressive and violent person, and thus must be guilty. While a cautionary or limiting instruction to the jury might have cured the defect, none was given in this case. We cannot say with confidence that the jury's verdict was based solely on competent evidence. Thus, we are compelled to reverse defendant's conviction.

D. COMPETENCY

Defendant finally argues that his due process rights were violated because he was not competent to stand trial. We disagree.

A trial court's decision concerning a defendant's competency to stand trial is reviewed for an abuse of discretion. *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990).

"A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCL 330.2022(1). "The issue of competence can only be raised by evidence of incompetence." *People v Blocker*, 393 Mich 501, 508; 227 NW2d 767 (1975). The trial court has a duty to consider the issue of incompetence if "facts are brought to its attention which raise a 'bona fide doubt' as to the defendant's competence." *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014) (citation omitted). The test for determining whether a "bona fide doubt" has been established "is whether a reasonable judge, situated as was the trial court judge . . . should have experienced doubt with respect to competency to stand trial." *Id.* at 138-139 (quotation marks and citation omitted). Evidence that may be relevant to the determination includes, but is not limited to, "[e]vidence of a defendant's irrational behavior, a defendant's demeanor, and a defendant's prior medical record . . . ." *Id.* at 139.

On appeal, defendant argues that the competency examination report from August 2023 was no longer valid when he stood trial in December 2023, and that the trial court should not have relied on its contents in reviewing his competency. At trial, the court observed that the competency examination report indicated that defendant had admitted that he was attempting to raise an insanity defense in order to avoid conviction. Defendant claims that those observations were inapplicable at trial and should not have been considered. However, defendant presents no evidence on appeal to support the notion that a lapse of four months' time invalidates a competency examination. Under MCL 330.2020, a defendant is presumed competent unless, due to a mental condition, they are "incapable . . . of understanding the nature and object of the proceedings against [them] or of assisting in [their] defense in a rational manner." The statute does not specify a time limit for the validity of a competency determination, nor does it require automatic reevaluation after a set period. Instead, the presumption of competency persists unless new evidence or behavior suggests otherwise, and the court is empowered to redetermine competency if appropriate. MCL 330.2040; *Kammeraad*, 307 Mich App at 138-139.

Defense counsel presented no evidence that defendant was not competent to stand trial. At trial, defense counsel returned from a meeting with defendant and made the following pronouncement regarding defendant's competency:

> Your Honor, I think that attorney-client privilege prevents me from really going into—to great detail. When I mentioned it to the prosecutor, however, I think the prosecutor could—he could overhear, sort of, some general tone of the conversation from in there. There are also some comments that my client made out here in front of the bailiff that I think would—would further support our request, and I—I honestly don't—don't think I can say anything else . . . .

The comments defendant allegedly made in front of the bailiff were not made part of the record. Further, the record largely indicates that defendant had a disagreement about trial strategy with his counsel behind a closed door, at which point defense counsel sought to have his competency reexamined. The court adjourned to allow the parties to research the matter, given that the issue was being raised in the middle of trial. When court resumed, defense counsel indicated that her concern pertained to defendant's desire to testify against the advice of counsel. The court responded:

[Defendant] seems to be understanding. He had no questions. He was appropriate. His responses were appropriate. He's been courteous and—and under control. While I appreciate the fact that there may have been hot discussions while they were discussing it during our break, and again, I place on the record to make it clear, I could hear the volume, but not the—the content of the—of the discussions. But . . . in my many years of practicing, I've also had . . . spirited conversations with—with my clients about what—what is happening and the simple fact of the matter is, is that there can be a huge difference between disagreeing with a course of action even if, in fact, it may, based upon legal experience, be not in the person's best interest.

The person can choose to make those choices the same way that a person receives a cancer diagnosis can decide whether they want to take treatment or they don't . . . . So, I think that the—the case law, that I've been able to gather just briefly, does indicate that this Court has to find—there has to be at least an issue to raise [a] bona fide doubt of whether or not he is competent.

I'm not saying that it isn't possible, and I certainly do acknowledge the fact that competency can be raised at any point, but I do think that they would have to put on some evidence that would indicate more than just his past.

Toward the end of the discussion, the trial court spoke to defendant directly, and defendant clearly stated that he understood he was testifying against the advice of counsel, and that he wished to testify regardless.[4] The court concluded, based on defendant's affect and presentation in the courtroom on the day of trial, that defense counsel had not raised a bona fide doubt as to defendant's competence. The trial court thus declined to order a new competency exam, or otherwise grant an adjournment or a mistrial, on the basis of defendant's apparent disagreement with his counsel or on defendant's past history of mental health issues.

A reasonable and principled judge in the trial court's position could have justifiably rejected the conclusion that defendant was not competent to stand trial. *Kammeraad*, 307 Mich App at 138-139. The trial court was "able to personally observe defendant's behavior and conduct, hear live defendant's remarks and the tone of and inflections in his voice, and directly assess defendant's demeanor, attitude, and comments, and we generally defer to the court's findings on such matters." *Id*. at 141; see also MCR 2.613(C) ("regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it"). The trial court thus did not abuse its discretion in this matter.

III. CONCLUSION

Defendant has not established that his due process rights were violated based on the officers' lack of reasonable suspicion to conduct an investigatory stop, their ensuing failure to

---

[4] Prior to the competency discussion, defendant was subjected to voir dire and indicated that he understood that he had the right to choose whether to testify. He additionally stated that he was testifying voluntarily and that he wanted to do so.

record the incident leading to his arrest, or the court's decision to deny his request for a new competency examination, an adjournment, or a mistrial. Counsel was likewise not ineffective for failing to request an adverse-inference jury instruction or for failing to object to certain lines of questioning by the prosecutor. Additionally, the prosecutor did not commit error or misconduct by asking Officer Hatfield about the Shop With a Hero program or by addressing the weaknesses in the defense's theory during closing argument.

The prosecution did commit misconduct by persistently asking the officers and defendant questions about defendant's parole status and his prior conviction of resisting and obstructing. The prosecution offered no legitimate basis for asking these questions and in doing so, prejudiced the jury against defendant and denied him a fair trial. No limiting jury instructions were given, and no effort was made to avoid prejudice to defendant. Defendant is thus entitled to a new trial on this basis.[5]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[5] Because we hold that defendant is entitled to a new trial, we decline to address his argument regarding resentencing.